TOMAS DE LA VEGA v. GEORGE BUTLER ET AL.

1. LIMITATION — BREAK IN OCCUPANCY — INTERVAL BETWEEN MAKING AND RECORDING DEED.—Continuous possession is not interrupted when there is only a short and reasonable time during which there was no actual occupancy between the outgoing and incoming of parties whose joint possession is required to complete the bar of the statute ; so a reasonable time must ordinarily intervene between the date of the deed and its record, and the change of possession in conformity with the title of record. This necessary and reasonable interval will not deprive parties of the protection of the statute in the one case, any more than the other.

2. SAME.—An interval of seven days between the execution of a deed and its record, will not break the continuity of possession under a recorded deed, where the adverse possession of both grantor and grantee in the deed is required to make the term of five years under the statute.

3. LIMITATION—PARTIES CLAIMING UNDER SAME GRANT.—The fact that a defendant, in possession, claims title under a grant to the plaintiff, does not estop defendant from pleading limitation as a bar. The defendant entering under a deed, holds for himself, and not for a remote vendor or the original grantee of the land.

4. SAME.—See facts held sufficient to support the defense of five years' limitation.

APPEAL from McLennan. Tried below before the Hon. Joab H. Banton.

The facts are given in the opinion.

*S. Mussina,* for appellants.—The record shows that both
34

plaintiff and defendant in error claimed title from a common source—they both claimed the same title—and, consequently, there can be no adverse possession, for "it may be safely laid down that an adverse possession will be negatived when the parties claim under the same title; when one claims under or through the other, there shall be no adverse possession sufficient to give title." (Adams on Ejectment, p. 47.) "When it commences under acknowledgment of the right owners of the estate, the possessions will retain their original quality, through any succession of occupants of the land, and will be in subservience to the rightful interest. The strictest proof of hostile inception of the possession is required." (Tyler on Ejectment, 860.) "No ·possession can be adverse, except the person in possession. holds under a claim of title which is entirely antagonistic to that of the true owner." (Id., 874.) "Every presumption is in favor of possession in subordination to the title of the true owner." (Id., 875.) "There must be no privity between him and the true owner." (Id., 874.) "The law adjudges the possession to be in subservience to the legal owner, for he can claim no benefit from a legal presumption, who shows by his own acts that the presumption cannot apply." "The claim of title must be adverse to that of the claimant, and not in any manner subservient to the latter." (Tyler on Ejectment, 874.)

The plaintiff introduced evidence showing that both titles were derived from a common author. Under the settled jurisprudence of this court, therefore, the defendant cannot contest the plaintiff's title, and the only question for us is, which of the parties to the suit is vested with the rights of their common author. (See the case of Bedford *v.* Urquhart, 8 La., 239; Cotton *v.* Stacker, 5 La. Ann., 677.)

"2d Louisiana Rep., 200, establishes the principle that when the fact is shown, either by the pleadings or evidence of a cause, that both parties claim under the same title, neither will be permitted to attack it." (Bedford *v.* Urquhart, 8 La., 239.)

"When both parties claim title under a common source, and plaintiff shows title from such common source, and the defendant is in possession, such evidence is sufficient, and it devolves upon the defendant to show either the nullity of plaintiff's deed, or prove a superior title in himself." (Stephens v. Hix, 38 Tex., 656.)

"When parties claim under a common source of title, proof of title by the plaintiff may not conclusively establish his right to the land against the defendant, but it overcomes the presumption of right from his possession, and throws upon him the burthen of disproving the plaintiff's case, or showing a superior title in himself." (Keys v. Mason, 44 Tex., 140.)

The court was asked to instruct the jury, "That plaintiffs and defendants cannot set up an adverse possession against the title of Tomas de la Vega, to bar him of his rights, and deraign title from him;" which instruction was refused; which was manifest error.

Counsel then discussed the merits of the respective titles set up, not discussed in the opinion.

*William H. Hamman,* also for appellant, in a brief of much learning, discussed the respective titles under which the parties held, involving questions, however, not passed upon by the court.

*E. J. Gurley,* for Butler.

*Flint & Graham,* for Giddings & Giddings.

Moore, Associate Justice.—This suit was commenced November 16, 1869, in the District Court of McLennan county, by J. D. & D. C. Giddings, against George Butler and others, to recover possession and quiet title to about one hundred and seventy-five acres of land, a part of a tract of eleven leagues of land granted by the State of Coahuila and Texas, in the year 1833, to Tomas De La Vega. Both the

plaintiffs and defendants to the original suit claim that the land here in controversy was the property of one Henry M. Hood, deceased, at the time and previous to his death, in the year 1865. And said Hood, it is admitted on all hands, deraigned his title from one Sutton, who, in 1850, settled upon and purchased of the agent of Mrs. Sophia St. Johns, who then claimed to own the said La Vega grant, six hundred and forty acres of it, of which the land here in controversy is a part.

On the 13th of August, 1872, Tomas De La Vega, said original grantee, intervened, and made himself a party, claiming title under his said grant, and also under a grant of one league, made March 15, 1835, to Peter Fleming, as a colonist, in the colonial enterprise of E. Sterling Robertson, and denying, in his petition for intervention, that either the plaintiff or defendant had any title to the land in controversy, and asserting "that a certain purported power of attorney, styled a *testimonio*," from said La Vega to Samuel May Williams, dated May 5, 1832, under which plaintiffs and defendants claimed to have derived their alleged title, was a forgery. And on the 3d of April, 1873, John, Henry, and Alice McPhaul, minors, children of Neil A. McPhaul and his wife Sarah McPhaul, by their father Neil A. McPhaul, as their next friend, &c., also intervened, claiming title under said La Vega, and also under said league-grant to said Fleming, their grandfather.

That the title of the intervenors, who are the plaintiffs in error, may be properly understood, it should be stated that the Fleming and La Vega grants conflict with each other, and both of said grants include the land here in controversy. And that La Vega, on the 24th of March, 1860, in consideration of the reconveyance to him of the one half thereof, conveyed all his right and interest in and to the land included within the boundaries of the Fleming grant to Sarah McPhaul, the mother of the minor intervenors, and Ann Eliza Tipton, the daughters, and, as is said, the sole heirs of said Fleming.

And that said Sarah and Ann Eliza, joined by their hus-
bands, Neil A. McPhaul and John Tipton, on the 4th of April,
1860, released and reconveyed to said La Vega an undivided
one half of the tract or parcel of land described in the pre-
vious deed of said La Vega to them. The effect of these con-
veyances was, no doubt, to unite in the parties to them all the
right and title which either of them may have been entitled
to assert, under either of said grants; and if, on the trial of
the cause, the intervenors showed that they held, by reason
of either of these grants, a title to the land superior to either
the plaintiffs' or defendants', the judgment is erroneous, and
must be reversed.

Evidently, however, they utterly failed to show any valid
and subsisting right to this land in themselves or either of
them, at the time of their intervention in this case, under
either of these grants.

To maintain the conclusion here announced, and to which
a careful examination of the record has led us, it is alto-
gether unnecessary for us to follow counsel in their discus-
sion of the vexed question as to the genuineness of the re-
puted power of attorney of May 5, 1832, from La Vega to
Williams, under and through which the parties under whom
the defendants in error claim to have derived their title, and
which, as is well known to the legal profession, has been the
subject of litigation in the courts of this State and United
States for the last twenty-five years, and which litigation
has generally, if not invariably, resulted unfavorably to the
present plaintiffs. Nor need we pause to inquire, if La
Vega's title was barred at the date of the alleged union of
the titles of La Vega and the heirs of Fleming, whether the
bar of the statute could be thus avoided, if the heirs of Flem-
ing were not also barred; nor need we consider the effect of
the deed from Peter Fleming and wife, offered by defend-
ants in error, to show that there was no interest in the land
in their father and mother, at the time of their death, to
descend to or vest in their children.

The evidence shows, beyond dispute, that Sutton, from whom the defendants in error claim to have derived title, purchased six hundred and forty acres of the La Vega grant, including the land in controversy, on the 28th of January, 1850, from the agent of Mrs. St. John, who claimed to have purchased it of La Vega, under said power of attorney of May 5, 1832, previously referred to; that, about the same time, he settled upon the land; and that it has been held in continuous actual occupation and possession, under his title, from that time to the trial of the case in the court below, by the defendant, Butler, and those from whom he deraigns his title. The deed to Sutton, however, was not recorded until the 23d of June, 1850. But, from that time forward, the evidence shows, beyond dispute, that it was also held under deeds duly recorded, with reasonably satisfactory proof of the payment of taxes. The interval of seven days between the date of the deed from Sutton to Arnold and its record, which, plaintiff insists, broke the continuity of possession under a recorded deed, is evidently too slight and unimportant to have this effect, or to be worthy of serious consideration. Continuous possession, as this court has frequently held, is not interrupted, although a short and reasonable time for such purpose may occur between the actual possession of the premises between the outgoing and incoming occupant of parties whose joint possession is required to complete the bar of the statute. So a reasonable time must ordinarily intervene between the date of the deed and its record, and the change of possession, in conformity with the title of record. This necessary and reasonable interval certainly will not deprive parties of the protection of the statute in the one case any more than the other. Intervenor also insists that, as Sutton claims title under the La Vega grant, he and those subsequently entering under him, are estopped from setting up the statute against La Vega. It is certainly unnecessary to say, that such a proposition is altogether fallacious and untenable. While it is true, that Sutton claimed

to have acquired a title to the land under the La Vega grant, still, he entered and held the land for himself, and not for La Vega. He held it adversely to La Vega, while claiming the right to thus hold it under the grant originally made to him. It is evident, then, conceding the invalidity of the power of attorney under which it was sold, that the bar of the statute of five as well as ten years had been fully completed against La Vega at the date of his conveyance to Mrs. McPhaul and Mrs. Tipton.

The same result is reached if we leave out of view the La Vega title, and consider the right of the parties under the Fleming title. Mrs. McPhaul was married in January, 1855, when the statute, of course, commenced to run against her; and more than five years had elapsed from that time before the intervenors commenced their suit. Mrs. Tipton, now Mrs. Wright, the other heir, is not a party, and it is therefore unnecessary for us to inquire how the case might stand as to her, if she had joined in the intervention. We will only further remark that, although McPhaul moved upon the Fleming land in 1860, the evidence shows that he respected the possession of the parties claiming and holding the six hundred and forty acres purchased by Sutton.

There is no error in the judgment, and it is affirmed.

AFFIRMED.