AUGUSTE STETTNISCHE, APPELLANT, v. WILLIAM LAMB, APPELLEE.

1. **Adverse Possession :** TITLE. Adverse possession of real estate, if continued without interruption for the length of time prescribed by the statute for the enforcement of the right of entry, is evidence of a fee.

2. ———: CASE STATED. Where the purchaser of a lot upon receiving a deed therefor erects a building thereon, and enters into possession, and afterwards sells and conveys the premises, a number of transfers of the property being thereafter made, and the building at times being vacant, but no interruption by an adverse claim to the title of the occupant, *Held*, That the possession was continuous, and after the expiration of ten years the occupant possessed the fee.

3. **Real Estate.** Possessions may be tacked if one comes in under the other and the possessory estates are connected and continuous.

4. ———: PRINCIPAL AND AGENT: PURCHASE BY AGENT. A party will not be permitted to purchase property and hold it for his own benefit, when he has a duty to perform in relation thereto which is inconsistent with his character as a purchaser on his own account. *Columbus Co. v. Hurford*, 1 Neb., 146.

APPEAL from Gage county. Heard below on report of N. K. GRIGGS, referee.

*J. R. Webster*, for appellant.

1.   We contend possession once established in Mrs.
Towle by material acts of visible and notorious ownership
must be presumed to continue until open, notorious, adverse
is *proved to have taken place in some one else.*   *Clements v.
Lampkin*, 34 Ark., 598, 602.   *Marston v. Rowe*, 43 Ala.,
271, 285.   *Rayner v. Lee*, 20 Mich., 384, 386.   No at-
tempt is made to prove adverse possession in any one else
save Wallis' own agent, and only by hearsay evidence of
his declarations.

2.   Reasonable lapse of time between successive tenancies
(as in this case, from April 24 to May 1st or May 15th)
does not break the continuity of adverse possession.   *De La
Vega v. Butler*, 47 Tex., 529, 534.

3.   Possession must be suitable to the character of the
*locus quo*, and the use to which the premises are put, and
such possession is proven.   *Webb v. Richardson*, 42 Vt.,
473, 465.   *Holdfast v. Shepherd*, 6 Iredell, 361.   *Draper
v. Shoot*, 25 Mo., 197, 199.   *Brumagim v. Bradshaw*, 39
Cal., 24, 45-6.   *Beaupland v. McKeen*, 28 Pa. St., 124,
134.   *Ewing v. Burnet*, 11 Peters, 41, 53.   *Stephens v.
Leach*, 19 Pa. St., 262, 265.   These premises being leased
to parties for business purposes, vacancy for a short time at
change of tenancies is not abandonment.   By holding the
premises out for rent, and soon renting the same, dominion
is asserted, possession maintained.   The hostile flag was
kept flying.   Without proof of actual ouster, that is enough.
The evidence shows that T. O. Wallis obtained his posses-
sion, under employment of plaintiff, for purpose of control-
ling and renting the premises, he being a real estate agent.
That being so, his occupation was not adverse to plaintiff.
He could not set up an adverse possession upon a posses-
sion so acquired.   So that his possession and Spoerri's was
that of plaintiff, and not adverse to plaintiff, and plaintiff's

possession continued to November 16, 1877, when Lamb, received attornment of plaintiff's tenant.

*L. W. Colby*, for appellee, argued the cause on the facts, and upon the law relative to adverse possession cited Sedgwick and Wait on Trial of Title to Land, §§ 731, 737, 738, 740, 745.

MAXWELL, J.

This action was brought in the district court of Gage county by the plaintiff against the defendant to cancel certain tax deeds on lot 1, block 66, in the city of Beatrice, and to cancel a quit-claim deed executed in 1881 by one G. W. Mumford to said defendant for said lot. The defendant claimed title under certain tax deeds and the deed from G. W. Mumford. The cause was referred to a referee, who found the facts as follows:

"1. That the site of the town of Beatrice, of which lot one in block sixty-six, now in controversy, is a part, was entered by Herman M. Reynolds, as mayor of said town, on the 12th day of August, 1859, and the same was afterwards, to-wit, on the 28th day of January, 1862, patented to said Herman M. Reynolds, as such mayor, such conveyance being made by the government of the United States.

"2. That on the 30th day of March, 1860, George W. Mumford became the legal owner of the lot in controversy, by deed of conveyance made out, executed by the said Herman M. Reynolds as such mayor aforesaid.

"3. That on the 28th day of November, 1881, the said George W. Mumford, who had not previously parted with the title to said lot, conveyed the same by deed of quit-claim to the defendant William Lamb.

"4. That on the 21st day of June, 1865, one I. P. Mumford conveyed the lot in controversy by warranty deed to Catherine Towle.

"5. That on the 12th day of September, 1867, said Catherine Towle and Albert, her husband, conveyed the said lot by warranty deed to Joseph Saunders.

"6. That on the 8th day of July, 1869, said Joseph Saunders and Emmers, his wife, conveyed the said lot by warranty deed to D. S. Jones and L. C. Reinbold.

"7. That on the 25th day of September, 1869, said D. S. Jones conveyed the undivided one-half of said lot by warranty deed to Chas. Vogt.

"8. That on the 28th day of August, 1870, said Charles Vogt conveyed the undivided one-half of said lot by warranty deed to L. C. Reinbold.

"9. That on the 14th day of October, 1871, J. L. Webster, register in bankruptcy, conveyed the said lot to C. P. Patterson, assignee of the estate of L. C. Reinbold and Caroline Vogt.

"10. That on the 25th day of December, 1872, said C. P. Patterson, as assignee as aforesaid, conveyed said lot by deed of quit-claim to Henry N. Shewall.

"11. That on the 27th day of December, 1873, said Henry N. Shewall conveyed the said lot by deed of quit-claim to the said plaintiff, Auguste Stettnische.

"12. That on the 9th day of September, 1875, defendant William Lamb purchased the said lot at tax sale for the taxes assessed thereon for the year 1874, and that at the time of such purchase by said Lamb the taxes assessed upon the said lot for the years 1872 and 1873 were delinquent and unpaid, and were not included in the amount for which said lot was sold as aforesaid to said defendant William Lamb.

"13. That on the 16th day of November, 1877, Hiram P. Webb, treasurer of Gage county, Nebraska, conveyed the said lot by treasurer's tax deed to said defendant William Lamb under and by virtue of said tax sale of September 9th, 1875, but said tax deed fails to show where the said lot was sold by the said treasurer of said Gage county.

"14. That on the 28th day of January, 1879, John Ellis, as treasurer of Gage county, Nebraska, conveyed the said lot by treasurer's tax deed to said defendant William Lamb under and by virtue of the said tax sale of September 9th, 1875.

"15. That on the 9th day of August, 1875, said defendant William Lamb began an action in this court against Charles Vogt and William Vogt, to have the lot now in controversy held to be the property of said Charles Vogt, and to have the same ordered to be sold to pay certain indebtedness owed by said Charles Vogt to said William Lamb.

"16. That on the 12th day of Oct., 1876, said William Lamb made the plaintiff herein a co-defendant with said Charles Vogt and William Vogt, by the filing of an amended petition in the cause last above mentioned. The object of the said cause was not, however, changed by the filing of said amended petition.

"17. That I. P. Mumford, who made the conveyance of the lot in controversy to Catherine Towle, was never in possession of said lot.

"18. That after said conveyance by said I. P. Mumford, the said Catherine Towle took actual possession of said lot either in the years 1865 or 1866 (the evidence does not show which), and erected a store building thereon, and continued in the actual possession and occupation thereof until she conveyed the same to Joseph Saunders.

"19. That immediately after the conveyance last mentioned, the said Joseph Saunders took actual possession of the said lot, and continued actual occupation and possession thereof until the date of the conveyance to D. S. Jones and L. C. Reinbold.

"20. That the evidence does not disclose when, if at all, D. S. Jones and L. C. Reinbold took actual possession of the lot in controversy under the conveyance from said Joseph Saunders and wife, nor does the evidence disclose

how long, if at all, they were in the actual possession of said lot prior to September 28th, 1869, the date of the conveyance by said D. S. Jones to Charles Vogt.

"21. That the evidence shows that Jones and Vogt paid the taxes assessed upon said lot for the year 1870,' but it fails to disclose what portion of the time, if any, said Charles Vogt and L. C. Reinbold were in the actual possession of said lot prior to August 28th, 1870, the date of the conveyance by said Charles Vogt to L. C. Reinbold."

The referee further finds that the evidence fails to show when L. C. Reinbold & Co. took possession, or that C. P. Patterson, assignee, or Henry N. Shewall were ever in actual possession. He also finds that the premises "became vacant April 1st, 1874, and so remained for a short time; that thereafter T. O. Wallis had the actual possession thereof, and claimed to be the owner of said premises ; that said T. O. Wallis then rented the premises to movers for a number of nights; the said T. O. Wallis while claiming to be the owner of said premises, and on the 15th day of May, 1874, rented them to one Agatha Spoerri, and collected and received from her two months rental therefor ; that during the said two months the said Agatha Spoerri remained in actual possession of said premises as tenant of said T. O. Wallis ; that after the expiration of the said two months the said Agatha Spoerri paid rent for a time, but how long the evidence does not disclose; to Charles Vogt, upon his demand; that owing to a controversy in regard to the title of said premises the said Agatha Spoerri declined to pay rent to any one thereafter; that said Agatha Spoerri and Jacob, her husband, paid for said Charles Vogt certain taxes assessed upon said lot." The referee found that the defendant had been in the actual possession of the premises ever since the 16th day of November, 1877, and that I. P. Mumford, and those claiming under him, had not been in actual possession continuously for ten years prior to November 16th, 1877, consequently that the

defendant was entitled to judgment. Exceptions were filed to the report, which were overruled, and the report confirmed. The plaintiff appeals.

The testimony of George W. Mumford was taken by deposition. He testifies that in March, 1864, he gave his "brother Isma Mumford a power of attorney to sell any property I then had in Gage county, Nebraska, which included any and all lots I then or since have held or owned in Beatrice." There is no po,wer of attorney on the records of Gage county from George W. Mumford to I. P. Mumford, and it is claimed that the last named person is dead, hence it is impossible to determine upon what authority I. P. Mumford made the deed to the lot in question to Mrs. Towle. And as George W. Mumford, who is a non-resident of the state, seems to have entrusted his brother I. P. with full power and authority to dispose of his real estate in Gage county, he was unable to state the facts in regard to the conveyance. This link being wanting in the plaintiff's chain of title, she does not attempt to supply it, but claims that she has a full and complete title by adverse possession.

The doctrine is now well established that what the law deems a perfect possession, if continued without interruption for the length of time prescribed by the statute for the enforcement of the right of entry, is evidence of a fee. Angell on Lim., § 380. The reason is, such possession supposes an acquiescence in all persons claiming an adverse interest, and upon this acquiescence is founded the presumption of the existence of some substantial reason for the assertion of the claim of title. Id. To constitute adverse possession it must be open, notorious, exclusive, and continued without interruption for the statutory period. *Gatling v. Lane*, 17 Neb., 77. *Haywood v. Thomas*, Id., 237. *Horbach v. Miller*, 4 Id., 32. *Stokes v. Berry*, 2 Salk., 421. *Graffins v. Totenham*, 1 W. & S., 488. There must be an actual entry in order that an ouster may

40

be made and an adverse possession begun. *Miller v. Shaw,* 7 S. & R., 129. *Altemas v. Campbell,* 9 Watts, 28. *Nepean v. Doe, Taylor v. Hord,* 2 Smith L. C., 583, and notes. And such possession must be continued for the full statutory period. The character of this continued possession necessarily must be governed to some extent by that of the real estate. It is unnecessary to discuss that question in this case, a building having been erected on the lot and possession thereof taken by the party under whom the plaintiff claims title. The weight of authority in this country sustains the doctrine that possessions may be tacked if one comes in under the other, and the possessory estates are connected and continuous. *Brandt v. Ogden,* 1 Johns., 156. *Jackson v. Thomas,* 16 Id., 293. *Winslow v. Newell,* 19 Vt., 164. *Ward v. Bartholomew,* 6 Pick., 410. *Overfield v. Christie,* 7 S. & R., 173. *Mc Coy v. Trustees,* 5 Id., 254. That is, the possession need not be continuous for the period of limitation in any one occupier. It is sufficient that the possession during that period be in the occupier and those under whom he claims, *McNeeley v. Langan,* 22 O. S., 32.

Let us apply these principles to the case at bar. The testimony clearly shows that in 1865 or 1866 I. P. Mumford conveyed the lot in question to Mrs. Towle; that soon thereafter they erected a building on the lot, and entered into possession of the same; that this building continued in the possession of Mrs. Towle, and those claiming title through her, until November 16th, 1877, when the defendant took possession under a tax deed. The testimony shows that at times, varying between a few days to, in one instance, some months, the building was vacant, but there is no proof whatever that the possession of the plaintiff, or those under whom she claims, was *interrupted.* The hearsay statement purporting to have been made by T. O. Wallis will be noticed hereafter. Where a party erects a building on a lot, and takes actual possession of the same

as his own, the fact that afterwards he, or those claiming under him, rent the property, or, in case it is unoccupied, have and claim the right to the possession of the same where there is no abandonment, is not an interruption to the possession. *De La Vega v. Butler*, 47 Texas, 529. The reason is, the building at least belongs to the claimant. He may use it in any manner he sees fit; and so long as no one enters into possession thereof claiming adversely to him his possession is not interrupted; and possession being once established in Mrs. Towle by the erection of a building on the lot in question, and taking possession of the same, such possession will be presumed to have continued until an interruption therein is proved. *Rayner v. Lee*, 20 Mich., 384. *Clements v. Lampkin*, 34 Ark., 598. This is illustrated by the case of *Haywood v. Thomas*, 17 Neb., 237, where certain lots in the town of Tekamah were inclosed with a fence. In 1870 the fence on the west side was burned down, and afterwards, in 1871, replaced, but the destruction of the fence did not interrupt the running of the statute.

Two witnesses testify that in March or April, 1874, T. O. Wallis informed them that he had purchased the property, and owned it, and that Wallis rented the property to certain parties as his own. Without discussing the question of the admissibility of this hearsay testimony, it is clearly proved, and not denied, that Wallis had been, and then was, the agent of Vogt for the leasing and care of this property, and his possession was, therefore, that of his principal. The rule is well settled that a party will not be permitted to purchase an interest in property and hold it for his own benefit where he has a duty to perform in relation thereto which is inconsistent with his character as a purchaser on his own account. *Van Epps v. Van Epps*, 9 Paige, 237. *Blake v. B. C. R. R. Co.*, 56 N. Y., 485. *Michoud v. Girod*, 4 How., 503. *Ringo v. Binns*, 10 Pet., 269. *Krutz v. Fisher*, 8 Kas., 90. *Grumley v.*

*Webb,* 44 Mo., 444. *Lytle v. Beveridge,* 58 N. Y., 592. *Columbus Co. v. Hurford,* 1 Neb., 146. If an agent, by merely alleging that he was the owner of property intrusted to his care as agent, could divest the title of the owner by whom he was employed to serve, property rights would indeed be held by a slender thread, but such is not the law.

In regard to the deed executed in 1881 by George W. Mumford to the defendant for the lot in question, Mumford testifies as follows : " My brother, Jacob Mumford, sent me out the deed in question, and a letter with it, stating that the old conveyance was so imperfect that he wished my signature for the purpose of correcting it. I only received one letter concerning this matter, that being from my brother, Jacob Mumford, which was just prior to the execution of the deed. I did not receive any consideration for the conveyance whatever." This is not denied, and as the defendant had not had a deed from Mumford before this time, it will not be contended that his equities in the case are very strong. As the plaintiff and those from whom she derives title to the premises were in actual, open, notorious, and continuous possession of the same for more than ten years before the 16th day of November, 1877, when the defendant took possession, the statute of limitations has run in her favor, and she has a valid title to the property by adverse possession. The judgment of the district court is reversed, and judgment will be entered in this court in favor of the plaintiff. The parties may agree, if they can, upon the amount due the defendant for taxes paid by him on the property, and the interest thereon, and also the amount due from him for four years before the commencement of this action, for the use and occupation of the premises. In case they are unable to agree, the court will appoint a referee to compute the same and strike a balance. One-half of Mr. Griggs', the referee, allowance is to be paid by each party.

JUDGMENT ACCORDINGLY.

THE other judges concur.