## Finis E. Downing

### *v.*

## Caroline Mayes *et al.*

*Filed at Springfield October 30, 1894.*

1. ADVERSE POSSESSION—*to defeat true owner of land—what constitutes.* An adverse possession, relied on to defeat the title of the owner of land, must be hostile in its inception, and so continue, without interruption, for twenty years. It must be actual, visible, exclusive, and be acquired and retained under claim of title inconsistent with that of the true owner, but it need not be rightful nor under a paper title.

2. SAME—*effect of abandonment.* Abandonment of such possession before the end of twenty years restores the seizin of the true owner, and a subsequent entry would only be a new disseizin, and the statute would again begin to run from such new entry.

3. SAME—*not lost by failure to secure a tenant.* One holding an adverse possession of land will not be held to have abandoned the same because of a failure, upon due effort made, to secure a tenant for the same for two years, no other person having gone into possession in the meantime, and the improvements of the adverse holder remaining thereon.

APPEAL from the Circuit Court of Cass county; the Hon. LYMAN LACEY, Judge, presiding.

Mr. J. N. GRIDLEY, for the appellant :

It being conceded that Strickland took possession of the land under an executory contract with Newman, it follows, under a well established rule of law, that his possession was subordinate to that of Newman, his vendor, and so long as this contract relation existed between Newman and Strickland the possession of the estate was not adverse. Am. & Eng. Ency. of Law, sec. 6.

If an entry is made under a bond for a deed, the possession prior to the time of payment of the purchase money cannot be adverse. *Ormond* v. *Martin,* 37 Ala. 604.

The same may be said of an entry and possession under an executory contract to convey. 54 Miss. 230 ; 25 Gratt. 137; 30 Miss. 49.

Upon the question of the continuity of possession the court is referred to Sedgwick & Wait on Trial of Title to Land, sec. 738.

It is not sufficient that a person entering upon lands has entered more than twenty years ago, if there have been one or two years in which he has had no possession within the twenty years. *Carlile* v. *Cooper,* 19 N. J. Eq. 259.

To make the bar of twenty years' possession operative and effectual, it is necessary that the possession claimed as adverse should be shown to be continued and uninterrupted. *Trotter* v. *Cassady,* 3 A. K. Marsh. 366 ; *Holdfast* v. *Shepherd,* 6 Ired. L. 365; *Moss* v. *Scott,* 2 Dana, 274; Sedgwick & Wait on Trial of Title to Land, sec. 739.

The possession should be such as to leave no doubt in the mind of the true owner, not only who the adverse claimant was, but that it was his purpose to keep him out of his land, (*Denham* v. *Hollman,* 26 Ga. 191,) or, as it is expressed in cases above cited, the tenant must "keep his flag flying." Trial of Titles to Land, secs. 737-739 ; *Cook* v. *Dennis,* 61 Texas, 248; *Medlin* v. *Wilkins,* 60 id. 409.

Adverse possession must be hostile in its inception, and continue uninterruptedly for twenty years. It should be of such a character as to notify the true owner of an

adverse claim and invasion of his rights.    It must be actual, visible and exclusive.   *Railroad Co.* v. *Galt,* 133 Ill. 657.

Mr. R. W. Mills, for the appellees :

The authorities all agree that what constitutes actual possession depends largely upon the nature of the land and the uses to which it would naturally be put.  *Brooks* v. *Bruyn,* 18 Ill. 542 ;  1 Am. & Eng. Ency. of Law, 252 ; *Kerr* v. *Hitt,* 75 Ill. 51; *McLean* v. *Fadden,* 61 id. 106 ; *Coleman* v. *Billings,* 89 id. 183 ;  *Sunol* v. *Hepburn,* 1 Cal. 263 ; *Davis* v. *Waterworks,* 57 id. 543 ;  *Minturn* v. *Burr,* 16 id. 107; *Coryell* v. *Cain,* 16 id. 567;  *Staminger* v. *Andrews,* 4 Neb. 59 ;  *Fleming* v. *Maddox,* 30 Iowa, 240 ; *Bowen* v. *Guild,* 130 Mass. 121; *Leeper* v. *Baker,* 68 Mo. 400 ;  *Clements* v. *Lamkin,* 34 Ark. 598 ; *Stettsniche* v. *Lamb,* 18 Neb. 619; *De la Vega* v. *Butler,* 47 Texas, 529 ;  *Rayer* v. *Lee,* 20 Mich. 384 ;  *Ford* v. *Wilson,* 33 Miss. 490.

The question of adverse possession is one much depending upon the intention of the possessor, and the knowledge, or means of knowledge, on the part of the owner of the land, and is therefore a question of fact, to be submitted to a jury.   Angell on Limitations, (1st ed.) 477, notes 2, 3, and cases cited.

A continued residence upon the land is not necessary, it being sufficient that the land has been enclosed in such a manner as to give publicity to the possession.  Angell on Limitations, (1st ed.) 482 ;  *Crispen* v. *Hannaven,* 50 Mo. 536.

Mr. Justice Craig delivered the opinion of the court :

This was a petition for partition, brought by Caroline Mayes (who was formerly the widow of William R. Strickland) and the heirs of Strickland, for partition of the north-east quarter of the south-east quarter of section 31, and the north-west quarter of the south-west quarter of section 32, township 17, range 12, west, in Cass county. Jesse Mayes and Finis E. Downing were made defendants to the petition.

William R. Strickland died in March, 1870, and it is claimed that he owned the two tracts of land at the time of his death, and that the lands then descended to his widow and children. As to the west forty-acre tract, in section 31, there is no controversy. The east forty, in section 32, belonged originally to one Benjamin Newman, and the defendant, Finis E. Downing, claims title to that tract under deed from the widow and heirs of Newman, executed in April, 1892, while, on the other hand, petitioners claim that William R. Strickland entered into the open, notorious and adverse possession of the land in the spring of 1866, claiming as owner, and continued in such possession until his death, in 1870, and that his widow and heirs (petitioners) have continued in such adverse possession ever since,—a period of over twenty years. On the hearing the court held that petitioners, under the evidence, established title under the twenty years statute of limitations, and entered a decree according to the prayer of the petition.

It appears from the evidence that in the spring of 1866 William R. Strickland bought the forty in question from Benjamin Newman, and the forty joining it on the west from one Wagner. He obtained a deed from Wagner, but the evidence fails to show any deed or contract in writing, of any character, from Newman. What the contract between Newman and Strickland really was is not disclosed by the evidence in this record. At the time, the land was of little value, being all flat, swampy land, and subject to overflow, except five or six acres, which was a sand ridge. The fact that the land at the time was worth so little may have been the reason the parties did not take the trouble to reduce their contract to writing. But however that may be, it does appear that in the spring of 1866 William R. Strickland entered upon the land, claiming to be the owner by purchase. He built a small house, stable, hog-pen, smoke-house, and enclosed the entire eighty acres, with other lands. Strickland occu-

pied the land until he died, in 1870.   After his death his widow and children continued to occupy the place until the widow married a man named Mayes, in 1877, who resided on land adjoining.   After her marriage she and her children continued to cultivate the land until the spring of 1883, when her husband moved to Kansas.   Before leaving for Kansas the widow placed her son-in-law, Powers, in the possession of the land, and he farmed it in 1883 and 1884.   In the fall of 1884 Powers moved to Kansas, and the widow returned to the neighborhood where the land is located, and made repeated efforts to lease it for the year 1885, but owing to the water on the land she was not able to procure a tenant.   In the spring of 1885 she made a further effort to rent the land, but was unable to do so.   In 1886 and 1887 she attempted to find a tenant for the place, but owing to the wet seasons she was unable to procure a tenant.   The land was not leased or farmed during the seasons of 1885, 1886 and 1887, but in February, 1888, a man named Majors rented the land from the widow, and occupied it from March until December, when he turned it over to Jesse Mayes, who has continued to occupy the land ever since.

It is well settled by the authorities, that where an adverse possession is relied upon to defeat the title of the owner of lands, the possession must be hostile in its inception, and so continue, without interruption, for the period of twenty years.   It must be an actual, visible and exclusive possession, acquired and retained under claim of title inconsistent with that of the true owner.   The possession need not, however, be under a rightful claim nor under a paper title.   (*Turney* v. *Chamberlain,* 15 Ill. 271.) Strickland entered into possession of the land claiming as owner.   He enclosed the land (with other lands) with a fence.   He erected a house, and resided on the land with his family.   He reduced the land to cultivation.   From the evidence it is apparent that the possession of Strickland was adverse, actual, visible and exclusive, acquired

and held under claim of title inconsistent with the true owner, and the only question of any serious difficulty is, whether the possession was continuous for a period of twenty years. If, during the period relied upon, the possession was abandoned by Strickland or his heirs, the statute would cease to run from the time of such abandonment, and a subsequent re-entry would not be available to establish a continuous possession. When the possession is lost or abandoned, the seizin of the true owner may be regarded as restored, and a subsequent entry constitutes but a new disseizin, and the statute would only begin to run from the new entry.

What constitutes actual possession depends, to a great extent, upon the nature of the land, and the use or uses to which it may be put. In *Brooks* v. *Bruyn*, 18 Ill. 539, it is said: "As a general rule, it is sufficient if the land is appropriated to individual use in such manner as to apprise the community, or neighborhood of its locality, that the land is in the exclusive use and enjoyment of another." The same rule was declared in *Kerr* v. *Hitt*, 75 Ill. 51.

In *Coleman* v. *Billings*, 89 Ill. 183, it is said: "It is true, appellee testifies that there were some periods of time when no one claiming under Miller or herself was actually residing upon the land; but actual residence, either by the party claiming, or a tenant, is not indispensable to continue possession or occupancy. If there is a continuous dominion, manifested by continuous acts of ownership, it is sufficient."

In *Clements* v. *Lamkin*, 34 Ark. 598, in discussing what constituted a possession of lands, the court said: "The possession of Topp's vendee, once established by material acts of visible, notorious ownership, which was done by putting negroes upon it and making a deadening, long known afterwards as the Lamkin deadening, must be presumed to have continued until open, notorious and adverse possession be shown to have been taken by another."

In *Hughs* v. *Pickering*, 14 Pa. St. 297, the following language of the judge at *nisi prius* seems to have been approved : "In order to destroy the continuity of possession, the vacancy must not be merely occasional, such as occurs in every case where a party, from some cause unable to obtain a tenant, shuts up his property for a short time, or, indeed, for a long time."

In *Stettsniche* v. *Lamb*, 18 Neb. 619, the court says: "Where a party erects a building on a lot, and takes actual possession of the same as his own, the fact that afterwards he, or those claiming under him, rent the property, or it is unoccupied, and he have and claim the right of possession, where there is no abandonment, is not an interruption of the possession. (*De la Vega* v. *Butler*, 47 Texas, 529.) The reason is, the building, at least, belongs to the claimant, and he may use it in any manner he sees fit, and so long as no one enters the possession thereof claiming adversely to him, his possession is not interrupted. Possession being once established in Mrs. Towle by the erection of a building on the lot in question and taking possession of the same, such possession will be presumed to have continued until an interruption therein is proved. *Rayer* v. *Lee*, 20 Mich. 384."

In *Crispen* v. *Hannaven et al.* 50 Mo. 536, there were several "breaks," so called, when no one was actually cultivating the premises, the longest of which was "from about 1861 or '62 to 1865 or '66." In discussing the charge to the jury as to what would constitute such a "break" as would destroy the possession, the court says : "It might have been inferred that, living off the premises, a failure to cultivate them for a year or more, for whatever reason, would constitute such a break. Nothing would be more erroneous. While an abandonment of the premises would so break the possession of him who has occupied that the constructive possession of the true owner will attach, and thus save his right of entry, every failure to cultivate the field for a season, or a delay in re-

pairing the fences when destroyed, will not be held to be an abandonment, if sufficient reason appears."

From the spring of 1866 until the fall of 1884 it is plain that Strickland and his widow and heirs held the continuous possession of the land, and if, under the facts, the possession was continued in the widow and heirs from the fall of 1884 until the spring of 1886, the bar of the statute would be complete. There is no evidence in the record that the widow and heirs intended to abandon the possession of the land, but, on the other hand, when Powers moved away, in the fall of 1884, the widow came to the premises and tried to find a tenant. Again, in the spring of 1885 she made an effort to find a tenant, but failed, on account of the wet season. After Powers left, in the fall of 1884, the land remained fenced, the buildings were all left on the land, and nothing was done to indicate an abandonment. Under such circumstances, did the widow and heirs lose the possession of the premises, or did the possession still remain in them, although they had no tenant during the year 1885 or 1886?

During the year 1885, and down to the spring of 1886, the improvements made by the Stricklands all remained on the land. The house had been damaged somewhat by hunters, but it remained on the land. The fence put upon the land to enclose it still remained. The possession of the Stricklands had not been disturbed. No person attempted to enter upon the land or invade the possession of the widow and heirs of Strickland. We think, therefore, that down to the spring of 1886 the widow and heirs of Strickland were in the possession of the land, although they were not on the land in person, and did not have a tenant thereon. Suppose a person owns a tract consisting of forty acres of land. He encloses the land with a fence, erects a house, and resides upon the land for several years. He finally concludes to change his residence, and moves to another place, but for some reason he is unable to procure a tenant. His house remains vacant

for three or four years, and the land is not cultivated. Does the owner, from the fact he cannot find a tenant for his land, lose the possession? We think not. If the widow and heirs had abandoned the possession of the premises, or had some other party gone into the actual possession, under a claim of right, before the twenty years had expired, there might be good ground for holding that the complainants were not entitled to invoke the Statute of Limitations. But such was not the case. Newman, the owner of the title, lived until 1880, and while he knew that the Stricklands were in the possession of the land claiming to own it, he never, so far as appears, set up any claim to the land, nor did his heirs set up any claim after his death. On the other hand, the Stricklands were allowed to hold the possession of the land for over twenty years, without objection from any quarter. Under the facts, we think it is plain that the decree of the court in favor of the Stricklands was correct.

It has been suggested in the argument that Strickland entered under a contract of purchase from Newman, and having entered under that title his possession was not adverse. A sufficient answer to this position is, the record fails to show a contract, of any description, ever made or entered into between Newman and Strickland in regard to the sale or purchase of this land. No writing was produced, nor was it proven that one ever existed. Moreover, the evidence fails to show even a verbal contract for the transfer of the land from Newman to Strickland. Some loose declarations of the widow were proven, but they do not make out a contract. But if they did, the declarations of the widow could not be held as binding on the heirs of Strickland.

After a careful examination of the entire record we think the decree of the circuit court correct, and it will be affirmed.

*Decree affirmed.*