SARAH J. RICHARDS V. MAXEY H. HASKINS.

FILED JUNE 9, 1904. No. 13,463.

Adverse Possession: ABANDONMENT. One holding adverse possession
    of land which he has inclosed, does not abandon such possession
    by his failure to have it occupied by a tenant or otherwise for a
    reasonable space of time, no other person making claim to the
    property or taking possession during such nonoccupation, and
    there being no evidence of any intent on his part to abandon his
    possession and claim to the land.

ERROR to the district court for Harlan county:    ED L.
ADAMS, JUDGE.  *Affirmed.*

*B. N. Robertson,* for plaintiff in error.

*D. W. Merrow, contra.*

DUFFIE, C.

This is an action in ejectment.  Plaintiff in error, who
was the plaintiff below, claimed title to 160 acres of land
in Harlan county.  The defendant is in possession as the
tenant of Walter G. Clark, who also claims title.  It was
stipulated in the record that David Whitney and Samuel
Bauserman, partners, were the owners of the land in July,
1878.  In August of that year these parties filed a petition
in bankruptcy in the district court of the United States
for the district of Nebraska, which petition was, by order
of the court, referred to J. L. Webster, register in bank-
ruptcy.  T. W. T. Richards was chosen assignee, and the
register thereupon conveyed to him by deed all the prop-
erty of the said Whitney and Bauserman, as required by
the bankrupt law of 1867.  The land in question was listed
among the assets of the bankrupt.  In December, 1878,
the trustee petitioned the federal court for leave to sell
certain assets of the estate, including the land in suit,
at private sale, and this petition was indorsed by the regis-
ter in bankruptcy and concurred in by the judge of the

federal court. Sometime thereafter said land was sold by the trustee to Burr H. Richards for the sum of $1,200, subject to the taxes due thereon, and a deed executed and delivered July 24, 1885. In November, 1901, the trustee filed a motion and affidavit in the federal court setting out the fact of a sale of said land, the execution and delivery of the deed, and that the records of the court did not disclose that an order of confirmation had been made by the court, although it was alleged that the trustee supposed and believed that the sale had been confirmed long prior thereto. And thereupon the federal court entered an order confirming said sale. Burr H. Richards departed this life in the city of Baltimore sometime in 1890, and by the terms of his will, the land in controversy was devised to the plaintiff, Sarah J. Richards. The foregoing constitutes the plaintiff's chain of title.

The defendant's chain of title is, first, a tax deed made by the treasurer of Harlan county, Nebraska, to C. C. Flansburg of date December 30, 1882. Flansburg conveyed to Lee A. Adams, December 15, 1883. Adams conveyed to Hugh G. Clark, June 7, 1884, and David Whitney and Samuel Bauserman quitclaimed to Clark, May 13, 1884. Clark died in 1892, and Walter G. Clark is his only heir and administrator of his estate. Adverse possession for more than ten years was the principal defense. The case was heard by the Honorable H. M. Sullivan who took the same under advisement; but prior to a decision of the case, Judge Sullivan resigned, whereupon the parties had the evidence transcribed, and, by agreement, the case was submitted to Judge Adams, on said evidence, who entered a finding and judgment for the defendant, from which the plaintiff has taken error to this court.

In the printed brief of the defendant, as well as in the oral argument on the submission of the case, many exceptions were taken to the regularity of the bankruptcy proceedings through which plaintiff claims title; but as we are of the opinion that the evidence fully supports the claim of adverse possession asserted by the defendant, it

would be a waste of time to discuss the numerous objections made to the proceedings in bankruptcy, and the effect of the trustee's deed to Burr H. Richards.

Relating to the defense of adverse possession, the evidence is quite conclusive that Hugh G. Clark rented the land in question to one Frank Shaffer in 1890. It appears that other owners of land had built fences on the east, south and west lines of the land in dispute sometime prior to the spring of 1891, and that Shaffer, on obtaining a lease from Hugh G. Clark, erected a fence on the north line of the land in the spring of 1891. There is some controversy as to the duration of Shaffer's lease, and as to the time that he actually occupied the land. In September, 1890, Shaffer wrote to Clark desiring to lease the premises for two years, and on November 16, 1890, he wrote Clark to make out a lease for two years at twenty-five dollars a year, and indorsed on this letter in the handwriting of Clark is the following memorandum: "W $\frac{1}{2}$ SW $\frac{1}{4}$ 14—E $\frac{1}{2}$ SE $\frac{1}{4}$ 15-1-17—Harlan Co. 2 years $25 per year, payable May 1, 1891 and 1892."

Shaffer again wrote Clark, December 1, 1890, requesting Clark to make out a lease for two or three years and send to him at once, and on December 8, 1890, he again wrote, acknowledging receipt of a letter from Clark with a contract in it. In this letter he states that the contract is all right with the exception of one matter which Clark overlooked, which was in relation to Clark's buying, at the end of the lease, any fence that Shaffer might erect upon the land at 50 per cent. of its cost. May 9, 1891, Shaffer wrote to Clark, inclosing $12.50, one-half of the agreed rent for 1891, promising to remit the balance on November 1. These letters, together with Clark's memorandum on the letter of November 16, 1890, are quite conclusive in connection with Shaffer's oral evidence, that Clark rented the premises to Shaffer for the years 1891 and 1892 at $25 a year; and the evidence is undisputed that Shaffer held possession during 1891, having, as before stated, built a fence along the north line in the spring

of that year. In the year 1892, Shaffer went to Colorado, and sold his fence to Gifford & Williams. Whether he sold the unexpired term of his lease is a disputed question, and the evidence relating thereto is quite unsatisfactory. In his testimony Shaffer says:

"In 1892 I was going to quit down there and I brought some of my cattle up in the fall and I left some down there, and during this time I was figuring to sell the fence, and, as I stated, I wrote to Mr. Clark to take the fence, and he said he would prefer not to do it. He said to do the best I could; that he would rather I would sell it,.because he was so far away from it; and I figured with somebody else in regard to selling it, and I turned this over to Gifford & Williams in 1892, but whether it was early in the spring or during the summer I couldn't tell you."

By the Court: When did you close up the deal with them about the fence?

A. In 1892.

Q. When did they take the land?

A. In 1892.   *   *   *

By Mr. Merrow: In regard to the rent for the year 1892, state whether or not these men, Gifford and Williams, settled with you for the rent for that year?

A. I think they did—I wouldn't be positive—My best recollection is that they did—I am not positive in regard to that—I think that was included when I sold the fence.

Mr. Williams, whose deposition was taken in Colorado, stated that he occupied the land during the years 1892 and 1893; that he got possession from Frank Shaffer; that his best recollection is that he paid Shaffer the rent for one year, and J. B. Billings & Son for one year. The evidence is undisputed that J. B. Billings & Son took charge of the land at the request of Walter G. Clark in the spring of 1893, and they rented it to Gifford & Williams for the year 1893, and have continued to act as agents for Walter G. Clark from that time up to the date of the commencement of this action. While we are not

entirely satisfied from the evidence that such is the case, our best judgment is that Shaffer, at the time he sold his fence to Gifford & Williams, also turned over the land to them for the unexpired term of his lease; and while it is possible that Shaffer did not put Gifford & Williams in possession of the land for the time his lease still had to run from the date of their purchase of his fence, and that there was a break in the possession of the land by Clark, through his tenants, we do not think that such break in the occupation would work an abandonment of the possession or serve to interrupt the continuity of possession claimed by Clark. Many authorities are to the effect that where one has inclosed land and made improvements thereon that he does not abandon such possession by his failure to have it occupied by a tenant or otherwise for a limited time, no other person claiming or taking possession during such interval.

In *Hughs v. Pickering,* 14 Pa. St. 297, the following was held: "In order to destroy the continuity of possession, the vacancy must not be merely occasional, such as occurs in every case where a party, from some cause, unable to obtain a tenant, shuts up his property for a short time, or, indeed, for a long time." In *Crispen v. Hannavan,* 50 Mo. 536, there were several occasions when no one was actually cultivating the premises, the longest of which was from about 1861 or 1862 to 1865 or 1866. In discussing the charge to the jury as to what would constitute such a break as would destroy the possession, the court say: "It might have been inferred that living off from the premises, a failure to cultivate them for a year or more, for whatever reason, would constitute such a break. Nothing would be more erroneous. While an abandonment of the premises will so break the possession of him who has occupied, that the constructive possesion of the true owner will again attach, and thus save his right of entry, every failure to cultivate the field for a season, or a delay in repairing the fences when destroyed, will not be held to be an abandonment if sufficient reason appears."

This court in *Stettnische v. Lamb*, 18 Neb. 619, has said: "Where a party erects a building on a lot, and takes actual possession of the same as his own, the fact that afterwards he, or those claiming under him, rent the property, or in case it is unoccupied, have and claim the right to the possession of the same where there is no abandonment, is not an interruption to the possession. * * * The building at least belongs to the claimant. He may use it in any manner he sees fit; and so long as no one enters into possession thereof claiming adversely to him his possession is not interrupted; and possession being once established in Mrs. Towle by the erection of a building on the lot in question, and taking possession of the same, such possession will be presumed to have continued until an interruption therein is proved." An even stronger case is found in *De La Vega v. Butler*, 47 Tex. 529.

While citing the Texas case as showing to what extent some of the courts have gone, we do not wish to be understood as wholly approving the rule therein announced. We believe the true rule to be that an absolute abandonment by the claimant, however long his possession may have continued, and however great the improvements made by him, has the effect to vest in the true owner of the title constructive possession of the premises, and that the rule announced by this court in *Stettnische v. Lamb, supra,* is the rule which should prevail. Measured by this rule, Clark, who had taken actual possession of these premises by his tenant, in 1891, cannot be held to have abandoned his possession because his tenant may have left the premises before the expiration of the lease; there being no evidence in the record that Clark himself had done anything indicating an intention to disclaim title or to abandon the possession which he had taken through his tenant.

Holding these views, we recommend that the judgment of the district court be affirmed.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.