CHARLES HOFHERR

*v.*

HERMAN J. MEDE.

*Opinion filed February 21, 1907—Rehearing denied April 18, 1907.*

1. LIMITATIONS—*elements essential to such possession as constitutes a bar.* The possession which is required to constitute a bar to the assertion of a record title to real estate by the holder thereof must be hostile or adverse, actual, visible, notorious and exclusive, continuous, and under a claim of title inconsistent with that of the possessor of the record title.

2. SAME—*what is not such possession as bars an easement.* An easement created by recorded deed giving the use of a strip of land for a private alley between the east and west portions of a lot is not barred by twenty years' use of such strip by the owner of the west portion for access to his property, storing delivery wagons at night, and other similar acts, and by the fact that he and his grantees maintained the fence erected between the strip and the east portion by a remote grantor of the owner of such east portion who had not, during such period, used, or needed to use, the strip as a private alley.

APPEAL from the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

WILLIAM B. MOAK, for appellant.

CHRISTIAN MEIER, and PAUL C. MEIER, for appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

Lot 117 in Bronson's addition to the city of Chicago is ninety-nine feet in width from north to south and extends from LaSalle street on the east to Wells street on the west. No street touches it on its northern boundary, but beginning at LaSalle street a public alley runs west just north of the north line of this lot the greater part of the length of the lot, and then turns at right angles and continues north until it intersects Carl street, on the north of the block. The west

line of this alley, as it runs north, is parallel with, and one hundred feet distant from, the east line of Wells street. Joseph Willemin, being the owner of the west one hundred and seventy-two feet of the north half of lot 117, on November 8, 1871, conveyed to Ernst Prussing the east thirty feet of the west one hundred and forty-two feet of the said north half, and, following apt words to effect such conveyance, the deed contained this language: "Together with the privilege of using, together with the adjoining owners of the west one hundred (100) feet of said north half, the twelve (12) feet next west of said thirty (30) feet for an alley, hereby dedicating the east twelve feet of the west one hundred and twelve (112) feet of said north half of said lot 117 for an alley to be used privately, and to be controlled by the owners of the portions adjoining said twelve feet on the east and west sides thereof, exclusively."

Shortly thereafter, by another deed, Willemin conveyed to Prussing thirty feet of the north half of said lot lying immediately east of that conveyed by the deed of November 8, 1871, thereby making Prussing the owner of the east sixty feet of the west one hundred and seventy-two feet of the north half of the lot in addition to the easement which he had over the twelve-foot strip. Said sixty feet, through various conveyances, has become the property of appellee.

On April 20, 1875, Willemin conveyed the west one hundred feet of the north half of the lot to Jacob Kurz, and such changes in the ownership of that one hundred feet have taken place that appellant is now the owner thereof.

This controversy involves the ground described in the language above quoted from the deed of November 8, 1871, which will be hereinafter referred to as the "strip," and which is twelve feet in width from east to west and forty-nine and one-half feet in length from north to south, lying immediately east of said one hundred feet conveyed to Kurz and immediately west of sixty feet of the north half of said lot belonging to appellee.

The following drawing and the accompanying memoranda will perhaps aid the understanding:

3 Tract conceded to belong to appellee.
4 Tract conceded to belong to appellant.
6 Twelve-foot strip involved in this suit.
7 Public alley.

While Prussing owned the property adjoining the strip on the east he built a fence on the east line and erected a gate on the north line of the strip. The gate extended entirely across the end of the strip. As we understand the record, there was then, or shortly thereafter, a fence on the west and south lines of that strip, but by whom that fence was erected does not clearly appear. The fence on the west line had been removed some time before the beginning of this suit. Who removed it, or when, is not shown. Kurz erected a building, with store rooms below and living apartments above, on the west end of the north part of his one hundred feet and a barn on the east end of that part of his property. He took up his residence and engaged in the butcher business there until some time in 1880, when one Pretzsch seems to have acquired title to the one hundred feet originally conveyed by Willemin to Kurz. No instrument conveying the property to Pretzsch was offered in evidence, however, and

we are in the dark as to whether he in fact had title. He went into possession during the year 1880, and resided on the property and engaged in the same business that Kurz had followed until March 21, 1892, when he conveyed to the appellant the tract originally conveyed by Willemin to Kurz. Appellant since that time has resided on the real estate and conducted a meat market there, and has also erected a build-- ing, designed both for business and residence purposes, on the south side of the tract so conveyed to him, which build- ing abuts on Wells street and extends to the east, leaving a passageway between it and the building on the north part of the property.

During the time that Kurz, Pretzsch and appellant occu- pied the property conveyed to Kurz by Willemin, down to the time of the filing of the bill herein, each made use of the strip in the manner hereinafter stated. Shortly before the beginning of this suit appellee began the erection of a ware- house immediately east of and adjoining the strip. That land had not theretofore been occupied by any building, and appellee's predecessors in title prior to that time had no occasion to use the strip. While engaged in constructing this building appellee removed the fence on the east and south of the strip, he being then the owner of the land ad- joining the strip on the south. Appellee also then began to make use of the strip as a passageway, and was about to remove the gate on the north of the passageway, when ap- pellant, on September 26, 1903, filed the original bill herein in the circuit court of Cook county, and obtained a tem- porary injunction restraining appellee from removing the gate on the north of the strip and from going upon or tak- ing possession of the strip.

On October 13, 1903, appellant filed an amended bill, by which he represents that he is the owner of the strip by virtue of the fact that Kurz, Pretzsch and himself have suc- cessively been in the actual, adverse, open, visible and ex- clusive possession thereof, under claim of ownership, since

1875; represents that appellee has entered upon the property in the manner above stated without the consent and against the protest of appellant, and that he threatens to remove the gate at the north end of the strip; that the building of appellee is erected according to plans contemplating the continuous use by appellee of the strip as an alley; states that appellee's use of that strip in that manner will prevent appellant from renting his store buildings, as they cannot be rented unless the tenants can have the exclusive use of the strip; that the conduct of appellee will tend to a breach of the peace, cause numerous suits to be brought and inflict irreparable damage upon appellant; prays that appellee be enjoined from interfering with the gate and from going upon or taking possession of the strip, or any part thereof.

Appellee answered, averring that the strip was a public alley, and filed a cross-bill stating that the strip was a private alley; that he was entitled to use the same as such, and that appellant threatens to use force in expelling him therefrom should he attempt to use the same as an alley, and that appellant threatens to use force to prevent appellee removing the gate now at the north end of the alley; avers that he has no adequate remedy at law, that appellant's conduct will tend to a breach of the peace, cause numerous suits to be brought and inflict irreparable damage upon appellee. The cross-bill prays that appellant be restrained from obstructing the north entrance to the strip and from interfering with appellee's use and enjoyment of the piece of ground as an alley.

Appellant answered the cross-bill, denying that the strip was an alley and admitting that any attempt to remove the gate on the north by appellee would tend to a breach of the peace. Replications were filed, the cause was referred to a master, who took the proof and recommended that the injunction issued against appellee be dissolved, that complainant's bill be dismissed for want of equity, and that a decree be entered in accordance with the prayer of the cross-bill. Appellant filed objections, and upon his objections being

overruled filed exceptions in the circuit court, and upon a hearing a decree was entered in accordance with the recommendations of the master and the cause comes to this court by appeal.

As to whether the facts as stated by the original and amended bills warrant resort to a court of equity no question has been made.

By the deed orginally made by Willemin to Prussing, the owners of the real estate on the east and on the west of the strip had an easement in the same, and the strip, by virtue of that deed, became a private alley. Appellant claims. that he is now the owner of that strip in fee, and that the right of the owner of the real estate on the east of the strip to use the same as a private alley has been barred by the twenty years Statute of Limitations.

It is evident that for more than twenty years prior to the time when appellee began the construction of his building on the east of this strip neither he nor any other owner of the land on the east of the strip had made use of the strip as an alley or otherwise, and it is also evident that neither appellee nor those through whom he claims had, during that period, any occasion to make any use of it. During all that period the alley was used by Kurz, Pretzsch and appellant, and the question is whether such use of the strip as they made, successively, and such possession of it as they had, was a sufficient possession to bring them within the Statute of Limitations. The fence on the east and north of the strip was erected by Prussing, and after its erection was maintained successively by Kurz, Pretzsch and appellant, and the strip was used by them principally as a means of ingress and egress to and from the buildings on the west. They used delivery wagons in connection with the meat business and the wagons were left on this strip when not in use. The strip was also used by them as a place upon which to deposit lumber and other property which they desired to use in connection with the business they were carrying on. There is

also some evidence that at one time there was a shed erected thereon in which poultry was kept, but Pretzsch, who is said to have used the shed for this purpose, testifies that the shed did not stand on the strip but on the ground immediately south of it. There is also proof that Kurz and Pretzsch each claimed to be the owner of the strip, and that Pretzsch represented to appellant, at the time he sold to him, that he was the owner in fee thereof, and that appellant, if he purchased from him, would become the owner of that piece of ground. The evidence in this respect is weakened, however, by the fact that it does not appear that Kurz conveyed this strip to Pretzsch, and by the further fact that it affirmatively appears that Pretzsch did not by deed convey it to appellant.

As has been frequently stated, the possession which is required to constitute a bar to the assertion of a record title to real estate by the holder thereof must include five elements. It must be (1) hostile or adverse; (2) actual; (3) visible, notorious and exclusive; (4) continuous; and (5) under a claim of title inconsistent with that of the possessor of the record title. (*Downing* v. *Mayes,* 153 Ill. 330; *Zirngibl* v. *Calumet Dock Co.* 157 id. 430; *Ely* v. *Brown,* 183 id. 575; *Illinois Central Railroad Co.* v. *Hatter,* 207 id. 88.) When this test is applied we think the proof of appellant fails. The uses which he and those through whom he claims made of this strip, although in some respects exceeding the uses they might rightfully make thereof by virtue of their easement, were still not such unusual uses of a private alley as would appear to be hostile to the right of appellee, and those through whom he deraigns title, to the easement claimed in the ground in question. The fact that the owners of the land on the west of the strip maintained the fence on the east and the gate on the north thereof which had been erected by appellee's remote grantor, is in this case without significance. Such maintenance of a fence and gate erected by Prussing does not afford proof that the use and possession of the property by the parties maintaining the

fence and gate were hostile or adverse to the rights and interests of Prussing, who erected the fence and gate, or of those who succeeded him in title.

We are of the opinion that the right to the easement in this strip, conveyed to the owners of the land on the east thereof by the deed of November 8, 1871, was not barred by such possession of the strip as was enjoyed by the owners of the tract on the west thereof, for the reason that it did not appear that such possession was hostile to the right of appellee and his predecessors in title.

Accordingly the decree of the circuit court will be affirmed.