RAYNER v. LEE.

---

## John Rayner v. Frederick J. Lee.

*Deed: Certificate of acknowledgment: Record.* A deed duly executed and acknowledged by the husband is admissible to record, notwithstanding the certificate of the acknowledgment by the wife, is defective.—*Hall v. Redson, 10 Mich., 21.*

*Dower.* A widow's dower, before assignment, is a mere right in action and nothing more.

*Evidence: Continuous possession.* The effect of evidence of continuous possession, as the basis of a claim of title, is not diminished by proof of occasional interruptions in the actual occupancy of the premises; nor by the fact, that at times, they were occupied by persons not distinctly shown to be in under any of the parties in the claimant's chain of title;—there being no proof of any adverse occupancy, nor of any intention of the claimant or his grantors to abandon the possession. It is a just presumption that a tenant merely, is in under the party claiming title.

*Evidence: Adverse possession.* Proof that a person entered into possession under a contract with a party under whom the claimant holds, it appearing that he never received a deed, and that he had ceased to occupy the premises, is not evidence of possession adverse to the claimant.

*Evidence: Occupancy.* A tenancy by a party who holds under a written lease may be proved by parol.

*Evidence: Title to lands.* In a bill to quiet title, it is sufficient, *prima facie*, if the complainant makes out a title, apparently good, as against the defendant.— *Hall v Kellogg, 16 Mich., 135.*

*Tax title: Double assessment: Once paid.* A sale for taxes, for a year in which it is shown the land was twice assessed and the tax once paid, is invalid.

*Assessment roll: Resident and non-resident property.* A provision of law which requires that resident and non-resident real estate should be separately assessed must be observed, or the assessment will be invalid; and a sale for unpaid taxes, not thus assessed, will convey no title.

*Heard May 5. Decided May 10.*

Appeal in Chancery from Livingston Circuit.

The bill in this cause was filed by John Rayner, in the

RAYNER v. LEE.

Circuit Court for the County of Livingston, in Chancery, against Frederick J. Lee, to quiet the complainant's title to Lot 54, on Crane & Brooks' plat of the village of Howell, and to compel a release of the defendant's pretended title.

The defendant answered denying the validity of the complainant's title; claiming title in himself; *First*, under a deed made to him by the Auditor General of the State, based on a sale of the premises for taxes assessed thereon, and returned as delinquent for the year 1861.; *Second*, under a deed from Flavius 'J. B. Crane and wife to him, bearing date the 15th day of April, A. D. 1865 ; and *Third*, under a deed from the Marshal of the village of Howell to him, based on a sale of the premises for the non-payment of municipal taxes assessed thereon for the year 1863.

A replication was filed and proofs taken; and on the hearing the Court dismissed the bill. The complainant appeals to this Court.

*H. H. Harmon,* for complainant.

*A. Russell,* for defendant.

COOLEY, J.

The bill in this case was filed to quiet the complainant's title to a certain village lot in Howell, which he had purchased in 1861, at Sheriff's sale, on an execution against Samuel S. Hunt. Hunt's title, it appears, was derived through John G. Peterson, who, on March 22, 1842, gave a deed of the lot to Wellington A. Glover. Glover immediately took possession under his deed, claiming title, and died in the occupancy of the lot the next year, and it was sold at probate sale by his administrator to Hezekiah Gates. From Gates to complainant there were a number of intermediate conveyances, and it appears that the grantee in each of them was in possession, either in person or by tenants. This showing would appear, therefore, to make

out a good *prima facie* title in complainant, by possession, without attempting to trace the title back of Peterson, which he made no effort to do. The defendant, however, claims that the title is defective.

1. Because to several of the deeds the certificate of acknowledgment, so far as the wife of the grantor is concerned, is not in conformity to the statute, and consequently the deed was not entitled to record, and could not be proved by the record, as was done in the present case.

We have looked into these records, and find that in every case except one, the acknowledgment is sufficient as to the grantor. If defective as to the wife, the deed nevertheless passes the title subject to the contingent right of dower, and was properly recorded as the deed of the husband.—*Hall v. Redson, 10 Mich., 21.*—The exceptional case is a deed given by the widow of Glover after a second marriage, by way of release of her dower right. It is immaterial to the present case whether that deed is valid or not; the complainant's title will not be affected by its invaldity, except to the extent of the right which it assumed the grantor to possess; and that,—the dower not appearing to have been assigned,—was a mere right in action and nothing more.—*Cox v. Jagger, 2 Cow., 651 ; Shield v. Batts, 5 J. J. Marsh, 12 ; Stewart v. Chadwick, 8 Iowa, 463.*

2. The second objection made to complainant's title is, that, although he shows an unbroken chain of conveyances extending back more than twenty years, he does not show continuous possession under them, and consequently cannot claim title by adverse possession.

This objection is based upon the facts, that on two or three occasions there were brief periods when the premises were not occupied at all, and that, at other times, there were persons in possession who are not distinctly shown to have occupied under any of the parties in complainant's chain of title.

We attach no importance to the breaks in the possession.

The evidence would indicate that they were only brief intervals between the departure of one tenant and the entrance of another; not at all indicating an intention on the part of the claimant to abandon his right. At no time were the premises vacant for any considerable period, and the evidence shows that in every year since 1842, some one under whom the complainant claims has' assumed to be the owner, and has exercised public and notorious acts of ownership. We 'cannot, therefore, find that the possession once acquired was ever abandoned, since the evidence all tends to the opposite conclusion. And on this point, the evidence given by the complainant that the land was continuously assessed on the township roll as resident lands, and the taxes paid by some one in complainant's chain of title, was not only admissible but very significant.

The objection that it does not distinctly appear, in the case of some of the occupants, that they derived possession from parties under whom complainant claims, has more plausibility, but is nevertheless untenable. In every instance it appears that the occupant was in as tenant merely, and it is but a just presumption that he was in under the party claiming title. The evidence satisfies us that such was the fact.

3. A third objection to complainant's claim is, that for a time the land was occupied by one Sliter, who actually claimed adversely to those in complainant's chain of title.

This objection is based on Sliter's testimony, who swears that he bought the land by contract, of one Vanderhoof, who is one of the parties through whom complainant claims, and that he paid for it, but never received a deed, though he occupied it for a year or so. This evidence is not very clear or very satisfactory, and no reason is given why, if it was true, the witness did not demand and obtain a conveyance. But assuming it to be true, it is obvious that Sliter, while in possession under his contract of purchase was not claiming adversely to, but under Vanderhoof,

and in recognition of his title. Sliter while he remained in possession, insisting upon his purchase, might have made good his equities, if he had any, against a purchaser from Vanderhoof, not because his possession was adverse, but because it was notice that he made claim to some right, and the purchaser would have been bound to ascertain the extent of that claim; but when he surrendered the possession he had held under Vanderhoof, it not only ceased to be constructive notice of equities in himself, but the proof of it would tend to support the Peterson title, under which he had claimed such right as he had.

Some objections were made by defendant to the proof given to establish some of the tenancies. The tenants held under written leases, but the leases were not produced, and the complainant was allowed to prove the tenancies by parol. There is no legal objection whatever to such evidence. No inquiry was made as to the contents of the leases, and it was not necessary to produce them in order to establish either the fact of occupancy, or the parties to the letting.

We are of opinion, therefore, that the complainant made out a *prima facie* title. It was not essential that he should show a title which would be perfect against all the world; if apparently good against the defendant, that would be sufficient.—*Hall v. Kellogg, 16 Mich., 135.*

The defendant, however, did not rely exclusively on the supposed defects in the title of the complainant, but set up title in himself, derived from three distinct sources.

1. A deed from Flavius J. B. Crane, who appears to have owned the lot in 1835.

2. A deed from the Auditor General of the State, given on a sale of the lot for delinquent State, County and Township taxes of 1861.

3. A deed from the village marshal, given on a sale of the lot for village taxes of 1863.

The first deed is a quit claim given for a nominal con-

sideration in 1865, and is ineffectual, because Crane's title was apparently barred at that time by the statute of limitations.

The second is also ineffectual, inasmuch as it is shown that for the year 1861 the lot in question was twice assessed and the taxes once paid.

The third, we think, is also ineffectual. The charter of Howell makes a deed given on a sale made for village taxes *prima facie* evidence of the regularity of the previous proceedings, but it gives very imperfect directions as to what those proceedings shall be. To supply its deficiencies the village Common Council have adopted ordinances, one of which provides that the village assessment roll " shall be made out and contain the same requisites, as near as may be, as the township assessment rolls." Now one of the requisites in the case of the township assessment rolls is that resident and non-resident real estate shall be separately assessed; and there are substantial reasons for this requirement, inasmuch as the taxes upon the first may be collected by levy and distress of goods and chattels, or by personal action, and it is the duty of the collector to make an effort at such collection before he can lawfully make return. The law has therefore provided the means by which the resident owner will be notified of the taxes claimed from him, and it would operate as a fraud upon him if a parcel of real estate in his possession, could be lawfully omitted from the list of property assessed to him, and taxed on another part of the roll where, if the law is obeyed, he knows it cannot be placed, and where consequently he would not be likely to look for it. It has several times been held in other States, that where the statute required resident and non-resident property to be listed separately, the assessment of either in the wrong list was void.— *Young v. Martin*, 2 *Yeates*, 312 ; *Burd v. Ramsay*, 9 *S. & R. 109; Rising v. Granger*, 1 *Mass.*, 48 ; *Lunt v.*

TURNER v. GRAND RAPIDS.

*Wormell, 19 Me., 100; Barker v. Hesseltine, 27 Me., 354; Messinger v. Germain, 1 Gil., 631.*

Upon the whole record we think the complainant established his right to the decree prayed for, and that the decree of the Court below dismissing the bill should be reversed, and a decree entered in this Court in conformity to these views.

The other Justices concurred.