SHAAF v. O'CONNOR.

1. Taxation—Decree for Sale—Collateral Attack.
A bill against the holder of a tax deed, to restrain an action of ejectment brought thereon, on the ground of payment of the tax upon which the decree was based, constitutes a collateral attack upon the decree, which cannot be permitted, no proceedings having been brought to set aside the sale within one year as provided by the statute.

2. Same—Tax Sales—Cancellation—Limitations.
Whether section 143 of the tax law (Act No. 128, Pub. Acts 1901) precludes cancellation of a tax sale by the auditor general after the expiration of six months, quære.

Appeal from Sanilac; Beach, J. Submitted October 11, 1906. (Docket No. 59.) Decided December 3, 1906.

Bill by Robert Shaaf and others against William O'Connor, trustee, and James B. Bradley, auditor general, to restrain an action of ejectment, and to quiet title. From a decree for complainants, defendant O'Connor appeals. Reversed, and bill dismissed.

*F. S. Viets,* for complainants.

*Albert McClatchey,* for appellant.

Hooker, J. There is no substantial dispute about the facts in this case. They are as follows: In 1858, while the several parcels of land which are the subject of this litigation constituted one parcel, owned and occupied by Jarvis Hurd, a tax was levied against the land. Being returned delinquent, said Hurd caused payment to the auditor general of one-half of the tax, which payment was seasonable, and was accepted and entered upon the books of the department as payment and satisfaction for the undivided one-half of the land. Upon the tax sale the remaining one-half was offered for sale, when Hurd's agent

paid to the county treasurer the remaining one-half of said taxes, with all interest, costs, and charges, and the same was entered upon the books of the county treasurer and the auditor general's office, and it appears and has at all times since appeared therefrom that said tax was fully paid. Subsequent taxes have all been seasonably paid.

In 1885 an undivided half interest in the land was bid in to the State at the annual tax sale for that year, and, not being redeemed, was held as State tax land until November 7, 1899, when the auditor general, acting under section 139 of the tax law (Act No. 169, Pub. Acts 1899), canceled the sale, for the reason that the law of 1885 was not retroactive, and therefore would not support such sale. He thereafter included an undivided half of these lands in the petition for the foreclosure of tax liens of 1899 and prior years (see section 139), and a decree was duly entered without objection, and it was again bid in to the State at the annual tax sale held in May, 1902, and on June 9, 1902, it was sold to William O'Connor, trustee, who, in due season, received a deed from the auditor general therefor, as is usual in such cases. Some time afterwards the statutory notice was served by O'Connor, trustee, upon the persons entitled thereto, and after waiting considerably more than the statutory period an action of ejectment was commenced by him to recover these lands.

The bill in this case was filed to restrain the prosecution of the ejectment case, to quiet the title, to require O'Connor to execute and deliver a deed, and for general relief. Answers were filed by both O'Connor and the auditor general, the latter of whom, while admitting the foregoing facts, justifies his omission to cancel the tax, upon the ground that he had no such authority, when applied to, more than six months having elapsed after the filing of proof of service of the statutory notice with the clerk. Defendant O'Connor appealed from a decree against him. The record shows that the auditor general's petition asserted a lien based upon a readvertised tax. A decree followed, and sale was made and confirmed.

This is a collateral suit which can only be made to prevail by attacking the validity of the decree. The record shows to our satisfaction that the decree was an unjust one, for the tax had been paid, but we can only so determine by trying a question of fact that might have been tried in that case, and of which that decree was conclusive. This we cannot do, such decree not being subject to collateral attack. See *Kneeland* v. *Wood*, 117 Mich. 174; *Peninsular Sav. Bank* v. *Ward*, 118 Mich. 87, 94; *Wilkin* v. *Keith*, 121 Mich. 70; *Haven* v. *Owen*, 121 Mich. 51; *Gates* v. *Johnson*, 121 Mich. 663; *Blondin* v. *Griffin*, 133 Mich. 647; *Rumsey* v. *Griffin*, 138 Mich. 413; *Hoffman* v. *Land Co.*, 144 Mich. 564.

We held in *Hayward* v. *O'Connor*, 145 Mich. 55, that "when the owner of land has notice—no matter how he obtains that notice—that his land has been sold for taxes, he must, if he desires to have the sale set aside by the circuit court, take proceedings within one year."

Notwithstanding the hardship of this case, we cannot set aside this sale without overruling the settled law of the State. It is clear, however, that the auditor general, if applied to seasonably, should have canceled this sale; but such application was not made, if made at all, until the period of six months after proof of the service of the statutory notice had elapsed. In view, however, of the decision in the cases of *Jakobowski* v. *Auditor General*, 144 Mich. 46, and *O'Connor* v. *Carpenter*, 144 Mich. 240, we cannot say that section 143 (Act No. 128, Pub. Acts 1901) precludes cancellation after the expiration of six months.

Without passing upon the question of whether complainants may yet obtain relief, through cancellation, we will reverse the decree, and dismiss the bill without costs to either party, of either court, and without prejudice to other remedies which complainant may choose to seek.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.