HORTON *v.* HELMHOLTZ.

1. TAXATION—SALE FOR TAXES—PURCHASE BY STATE—EFFECT.
   A valid sale to the State for taxes divests the original owner of all title to the land sold and vests a complete and perfect title in the State.

2. SAME—ORIGINAL TITLE—CONVEYANCE—EFFECT.
   A quitclaim by the original owner of lands previously bid in to the State at a valid tax sale conveys nothing.

3. QUIETING TITLE—RIGHT TO RELIEF.
   One must have either a legal or an equitable title if he is to be allowed relief upon a bill to quiet title, though an equitable title is sufficient. (Section 448, 1 Comp. Laws.)

4. SAME—TAX TITLE—SUFFICIENCY.
   Where a deed of State tax land executed by the auditor general was void because of insufficient payment therefor, and the original owner tendered a sufficient sum to the auditor general and demanded a deed, which was refused him, he acquired a sufficient equitable title to entitle him to relief by a bill to quiet title, though he did not move against the auditor general by mandamus to compel him to issue the deed.

5. SAME—PARTIES—AUDITOR GENERAL.
    The auditor general is a proper party to such a bill.

6. TAXATION—TAX TITLE—VOID DEED—EFFECT ON TITLE.
    Where a deed of State tax land executed by the auditor general
    was void because of insufficient payment therefor, but the
    holder also holds under other tax sales and deeds made subse-
    quent thereto, the later deeds are not void because of the
    failure to pay the deficiency on the prior sale, but the title
    conveyed by the later deeds is valid subject to a reassessment
    for the deficiency.

Appeal from Cheboygan; Mayne, J., presiding. Sub-
mitted April 18, 1907. (Docket No. 58.) Decided July
13, 1907.

Bill by Charles M. Horton against August C. Helm-
holtz and James B. Bradley, auditor general, to quiet
title to certain land. Defendant Helmholtz filed an an-
swer in the nature of a cross-bill to establish a title by
virtue of certain tax deeds. From a decree for defendant,
complainant appeals. Affirmed.

*A. A. Ellis*, for complainant.

*Frost & Sprague*, for defendant Helmholtz.

*John E. Bird*, Attorney General (*Charles W. McGill*
and *George L. Hauser*, of counsel), for defendant Audi-
tor General.

HOOKER, J. The defendant Helmholtz claims title to
the land in controversy under various tax titles as fol-
lows:

(1) A purchase at delinquent sale in May, 1893, for
the tax of 1890, at which time the purchaser bought the
State's title, for the years 1883 to 1889, the same having
been previously bid in to the State for those years. It is
admitted that the State's title was valid.

(2) A purchase at delinquent sale in December, 1893,
for the tax of 1891.

(3) A purchase at delinquent sale in December, 1895,
for the tax of 1893.

(4) A purchase at delinquent sale in December, 1896, for the tax of 1894.

(5) A purchase by the State at delinquent sale in May, 1898, for the tax of 1895; this title having been afterwards purchased at the auditor general's office on December 12, 1898, at which time the taxes assessed for 1896 and 1897 were paid by the purchaser.

(6) A purchase at delinquent sale in May, 1902, for the tax of 1899.

The complainant admits that the sales to the State for the taxes of 1883 and succeeding years were valid. It follows, therefore, that the original owner was divested of all title to the lands, and the State became vested with a complete and perfect title as early as 1885. The original title, quitclaimed to complainant, therefore conveyed nothing. One of two things is necessarily deducible from these facts, viz., either the defendant's grantor became vested with a complete and perfect title, or the deed from the State was void, in which case such a title remained in the State, and was subject to purchase from the auditor general, as in other cases. The complainant asserts the latter claim, and in 1904 he tendered to the auditor general a sum sufficient to cover the State's claim, interest, and charges, and requested a conveyance, which was refused him. Thereupon he filed this bill without attempting to enforce by mandamus compliance with his demand whereby he might perhaps have obtained the title from the State, if, as he claims, the State then had the title, and he was entitled to a deed. The bill in this cause is filed against Helmholtz to quiet complainant's title by setting aside and canceling as void the tax deeds as clouds upon complainant's title. The auditor general is made a party defendant, though the bill contains no specific prayer against him.

. We consider it elementary that one must have a legal or equitable title, if he is to be allowed relief upon a bill to quiet title. Under our statute one claiming only an equitable title may file such a bill. 1 Comp. Laws, § 448. We have held that the act of the auditor general in sell-

ing and issuing deeds for State tax lands on private sale is ministerial. Chief Justice GRANT said in *Eldridge* v. *Richmond*, 120 Mich. 588:

"The application was made by James H. McFarlan, who subsequently assigned to plaintiff. We think it conclusively appears that application and payment were made on August 3d. This was all that was necessary to complete the purchase. It is urged that the minds of the applicant and the auditor general did not meet until the latter had investigated and determined whether the land was subject to sale. The mind of the auditor general is of no consequence. He is not clothed with any discretion. His act is purely ministerial. The deposit with him of the amount due and the application complied with the law, and rendered the purchase complete. The subsequent acts of issuing a certificate, or executing a deed, or both, are mere ministerial acts necessary to evidence title. The title which the State has becomes absolute by application and payment."

See, also, *Youngs* v. *Povey*, 127 Mich. 299; *Hall* v. *Mann*, 122 Mich. 15; *Cockburn* v. *Auditor General*, 120 Mich. 644.

If, as contended, the deed first issued was void, and the complainant took steps which entitled him to a deed, we think it must follow under the cases cited that he acquired some sort of an equitable title, and that he might have it quieted in such a proceeding as this. We also think that it was competent to make the auditor general a party, and ask that he be required to execute and deliver the deed to which complainant should show that he was entitled. This, however, leaves out of consideration the changed conditions arising out of later sales.

The State's title for the taxes of 1883 to 1889 was sold in 1893 by the county treasurer. It is claimed that the sale and deed were void, *first*, because interest on the tax was computed at 6 per cent. instead of 12; *second*, because the purchaser did not pay the taxes for 1891 and 1892. Counsel insist that, if right in the proposition that the deed was void for the reasons given, there was a lien for the unpaid interest of $22.31, and that, while the

land might be assessed, returned, and sold for a later tax, such sale would be void if the purchase was not accompanied by the discharge of the existing lien, which lien was never suspended; it being plainly ascertainable from the record, unlike the case of *O'Connor* v. *Auditor General*, 127 Mich. 553, where all sums claimed or due the State had been paid, leaving nothing due to the State for which it could have a lien, until the amount received from Keith on his purchase of the State's title should be refunded.    We are of the opinion that this distinction is not warranted by the facts.    It is undeniable that according to complainant's contention there was a deficiency of $22.31 on the purchase of the State's title in this case, and that the sale of the auditor general and his deed were void. If that were all that there was of the defense, he would be entitled to have his title quieted.

But defendant holds under later titles procured after said purchase, and while the State's title was apparently held by defendant or his grantors, unquestioned, under the deed.    In the *O'Connor Case* the facts were similar. It is true that the deed in that case was canceled on another ground, viz., an error in publication; but it does not follow that it was not on the ground, also, that it was void for want of full payment as in this case, or that it was not claimed that the State had a lien upon the premises for the identical reason claimed in this case, which might have authorized a seasonable purchase by another. In fact, the opinion expressly states that "the deed was void for the further reason that when Keith purchased the tax of 1896 was a lien, and was not paid by him." The relator moved for a cancellation and refunding to him of the purchase money, basing his claim upon the contention that when Keith purchased for the tax of 1896 his purchase and deed were void, because of his failure to pay the deficiency on the prior sale.    The contention was not sustained, and it was indicated that the title thus conveyed was a valid title, but was taken subject to a reassessment for the deficiency, upon the ground that, section

73, Act No. 262, Pub. Acts 1899, should be construed as providing for a suspension of the lien of the State for the deficiency.    See, also, *Auditor General* v. *Clifford*, 143 Mich. 628.

We need not consider other questions in the case, and express no opinion upon them.    The decree is affirmed, with costs.

McALVAY, C. J., and MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.