HORTON v. SALLING.[1]

1. TAXATION—VOID TAX DEEDS—SUBSEQUENT PURCHASER.
   Deeds of State tax land issued in violation of sections 62 and 74,
   Act No. 16, Pub. Acts 1893, are void, and the lien of the State
   on such land is unimpaired and subject to purchase by one
   tendering a sufficient amount.

2. SAME—TAX DEEDS—CANCELLATION—QUIETING TITLE.
   The provision of the statute (section 3893, 1 Comp. Laws), rel-
   ative to setting aside sales after confirmation, was designed
   to confer and limit, in tax cases, the general discretionary
   power, lodged in courts of equity to set aside sales, made in
   the same proceeding, for an inadequate price bid, or other
   irregularities, and does not affect the authority of courts in
   general to hear and determine the validity of decrees and
   sales; and, a sale being absolutely void, complainant, a
   stranger to the proceedings, is entitled to question the valid-
   ity of such sale on a bill to quiet title.

3. SAME—STATE TAX LANDS—FIXING VALUES—STATUTES.
   The State has the right to impose any price upon its tax lands;
   and where, by an act of the legislature which was given im-
   mediate effect, the rate of interest charged upon delinquent
   taxes was increased, it affected sales made thereafter.

4. SAME—QUIETING TITLE—SETTING ASIDE VOID SALES—LACHES.
   The laches of the owner of the original title is not imputable
   to complainant, who, within a reasonable time after tender-
   ing an amount sufficient to pay the claims of the State, filed
   a bill to set aside void sales and to quiet title in himself.

5. EQUITY—TAXATION—VOID SALES—QUIETING TITLE—CONDITIONS
   PRECEDENT—COSTS.
   Where complainant is entitled to a decree for the cancellation
   of void sales of delinquent tax land and a deed from the au-
   ditor general on payment of the amount due the State, he
   should, as a condition precedent to the granting of such de-
   cree, be required to pay a sum to the defendants equal to the
   amount paid for subsequent taxes, with interest; and failure
   to tender such amount on the filing of the bill is ground for
   denial of costs in both the trial and appellate courts.

Appeal from Otsego; Sharpe, J. Submitted November
11, 1908. (Docket No. 37.) Decided March 3, 1909.

[1] Rehearing denied July 15, 1909.

Bill by Charles M. Horton against Ernest N. Salling, Rasmus Hanson, and Nels Michelson, copartners as Salling, Hanson & Company, and James B. Bradley, auditor general, to quiet title to land. From a decree dismissing the bill, complainant appeals. Reversed, and decree entered for complainant.

*Reilley & McPhee,* for complainant.

*George L. Alexander* and *De Vere Hall,* for defendant Salling and others.

*John E. Bird,* Attorney General (*Charles W. McGill* and *George L. Hauser,* of counsel), for defendant Auditor General.

HOOKER, J. In January, 1893, the State was owner of the premises in dispute, having acquired an absolute title thereto by virtue of its having bid the same in as State tax land for the taxes of 1884, 1886, 1887, 1888, and 1889. At the annual tax sales of that year one Hanson purchased the lands as delinquent for the taxes of 1890, and purchased the State titles, paying therefor such sums as the county treasurer claimed to be a charge thereon, with penalties and interest as computed and claimed by said treasurer on behalf of the State. Deeds were issued and recorded in due season. Hanson afterwards sold and conveyed the premises to Salling, Hanson & Co., defendants in this suit. The complainant is a stranger to the original title. Some claim is made that he took a quitclaim from the owner of the original title in 1906, but, if he received such a deed, it conveyed nothing, as the original title had been divested from such original owner many years before, and was lodged in the State as hereinbefore stated. See *Horton* v. *Helmholtz,* 149 Mich. 227. Some 12 years or more after Hanson's purchase, the complainant wrote to the auditor general for a statement of the purchases made by Hanson, and ascertained from him that the amounts paid for the State tax land titles aggregated $32.85, the amount paid for the delinquent

purchase $4.12, and that taxes for 1891, 1892, and 1895 had been paid at the county treasurer s office. On September 23, 1905, the auditor general wrote complainant the following letter:

"No. 35860,                    September 23, 1905.
"Mr. CHARLES M. HORTON,
          "Cheboygan, Michigan.
"*Dear Sir:* Referring to yours of September 16th, enclosing one hundred dollars and applying for the cancellation of sale on the n. e. $\frac{1}{4}$ of n. e. $\frac{1}{4}$ sec. 30, 31 n. 1 w. and to repurchasing the description. The reason assigned for such cancellation and repurchase is not such as the auditor general acting under the provisions of the tax law and the decisions of the Supreme Court can entertain. We return herewith the one hundred dollars.
                    "Very truly yours,
                        "JAMES B. BRADLEY,
                          "Auditor General."

It appears to be undisputed that this letter was an answer to a request from complainant to the auditor general to cancel the deeds to Hanson as void, and issue a deed of the premises to complainant, who thereupon filed a bill in this case, which was dismissed after a hearing. Complainant has appealed.

It is complainant's contention that the deeds issued to Hanson are void for the following reasons: The delinquent tax deed was attacked on the ground that the purchase of the State title occurred at a later time, and therefore the purchase at delinquent sale was in violation of section 62, Act No. 16, Pub. Acts 1893, which provides:

"*Provided,* That if any parcel sold under the provisions of this section shall also be offered at the same sale as State tax lands, the purchaser must also, at the same time, become the purchaser from the State tax land list, and pay the taxes remaining unpaid thereon, with interest as aforesaid, and must pay all the remaining taxes assessed for the year for which he purchased, with interest thereon. All sales made in contravention of this requirement shall be void."

The deed of State tax land is said to be void for the reason that the auditor general accepted interest on the

State's claim computed at 6 per cent. instead of at 1 per cent. a month as required by section 74 of said Act No. 16, Pub. Acts 1893.   We passed on the latter question in the case of *Horton* v. *Helmholtz*, 149 Mich. 227, and must therefore hold that both deeds were void under the statute.   Being so, the lien of the State was unimpaired, and the land was subject to purchase by complainant. The deed issued upon the purchase at delinquent sale must fall with the other under the express terms of the statute quoted.

Three defenses are urged to complainant's claim:

(1) That section 70 (1 Comp. Laws, § 3893) is an obstacle to relief by reason of the provision that "no sale shall be set aside after confirmation, except in cases where the taxes were paid, or the property was exempt from taxation.

(2) That 6 per cent. interest was a proper rate under the law, and therefore the sales were valid.

(3) Laches chargeable to complainant.

1. The provision quoted from section 70 was designed to confer and limit, in tax cases, the general discretionary power, lodged in courts of equity to set aside sales, made in the same proceeding, for an inadequate price bid, or because of irregularities, and was not aimed at the authority of courts in general to hear and determine the validity of decrees and sales.   This subject was discussed in the case of *Spaulding* v. *O'Connor*, 119 Mich. 45.   This sale being absolutely void, complainant might treat it so, and raise the question in ejectment (in a proper case) or by this proceeding.   Indeed, not being a party to the tax proceeding, it is at least doubtful if the remedy provided by section 70 was open to him.

2. The second question we must consider settled by *Horton* v. *Helmholtz*, supra.   The State had a right to impose such a price upon its tax lands as it saw fit.   The only State tax lands that it could sell at the May, 1893, sale, were those to which it had acquired title, and, by giving the act immediate effect, it was made possible to

obtain the advanced price at the May sales of that year, which could not otherwise have been accomplished.

3. We cannot assent to the claim of laches. There was no privity between complainant and the former owner of the original title. Complainant's relation was not different from that of any stranger to the title. Hence any laches imputable to such owner did not affect him. He acted with reasonable promptness, and while we are not impressed with his notions of common justice, and cannot commend his willingness to speculate out of the mistake of law of the county treasurer, for which defendants are not in any way responsible, he had the right to buy this title. We may, however, compel him to do equity. *Aztec Copper Co.* v. *Auditor General*, 128 Mich. 615. His course upon the trial indicates a willingness to take the benefit of the defendants' payment of taxes since the purchase. He not only did not offer to reimburse defendants for them in his bill, but his counsel objected to any proof regarding them. He is entitled to a decree for cancellation and for a deed from the auditor general on payment of his tender of $100 to the auditor general, from which should be refunded to the other defendants all sums paid under and in accordance with 1 Comp. Laws, § 3896, and as a further condition he must also deposit with said auditor general for the other defendants in the cause a sum equal to all taxes paid by defendants or their grantor, with interest, these amounts to be fixed upon the settlement of the decree or by remanding the cause for proof and determination by the circuit court upon the subject, if it cannot be determined from the record or agreed upon by the parties. In view of his failure to tender such taxes, we feel justified in denying complainant costs of either court.

The decree is reversed, and a decree may be entered in this court in conformity to this opinion.

MONTGOMERY, OSTRANDER, MOORE, and McALVAY, JJ., concurred.