REED *v.* WELSCH.

TAXATION—QUIETING TITLE—TAXPAYING TITLEHOLDERS—MISDESCRIP-
TION BY ASSESSOR.

> Title to 47 acres, more or less, comprising southerly portion of
> government lot upon which taxes have been paid is quieted
> in the successors in interest of the taxpaying titleholders
> thereof as against claim of persons succeeding to title to
> entire government lot through tax sale of such entire lot
> based on nonpayment of taxes for balance of lot which had
> been continuously misdescribed as including entire govern-
> ment lot by assessing officers for period of some 10 years
> (CL 1948, § 211.70).

Appeal from Huron; Bach (Arthur M.), J. Sub-
mitted October 8, 1959. (Docket Nos. 29, 30, Calen-
dar Nos. 47,941, 47,942.) Decided January 7, 1960.

Bill by Oscar W. Reed and Hannah A. Reed
against Lydia A. Welsch, doing business as Citizens
Group of Port Hope, a limited copartnership, and
others to quiet title to land claimed under State
scavenger sale.

In the matter of the petition of the Auditor Gen-
eral on tax proceedings, petition now in the name
of Lydia A. Welsch, doing business as Citizens
Group of Port Hope, a limited copartnership, to
amend decree to exclude certain land from delin-
quent tax sale.

REFERENCES FOR POINTS IN HEADNOTES

51 Am Jur, Taxation § 1135 *et seq.*

Cases consolidated for trial and appeal. Decree for plaintiffs. Defendant Welsch appeals. Reversed and remanded.

*Frederick S. Beach,* for plaintiffs.

*Walter LeRoy Morrison,* for defendant Welsch.

Black, J. As in *Consumers Power Company* v. *County of Muskegon,* 346 Mich 243, and *Spoon-Shacket Company, Inc.,* v. *Oakland County,* 356 Mich 151, the present parties are in court on account of grossly negligent administration of the general property tax law by duty-charged public officials. Such negligence started in 1930 with a patently erroneous property tax assessment. It continued through the years until the State land office board issued its presently described deed to plaintiffs' grantor in July of 1940, and thereafter to the time of trial below.

The controversy comes to better understanding upon examination of exhibit 1. The exhibit follows:

Depicted is the agreed separate ownership of the entire subject matter as same appeared of record when the first error of tax assessment was made. The east-west line, dividing the tracts designated respectively "16 acres (plus or minus)" and "47 acres (plus or minus)," is the northern boundary of the "south part of lot 2, 47A, T17 N R15 E." Title to such south part only is in issue.

The south part of said lot 2 (hereafter called "the Stafford parcel") was the property of one Fred H.

Stafford from 1890 until his death occurred in 1931. Stafford's title passed in succession to the Citizens Bank of Stafford, Smith & Co. and finally to defendant Lydia A. Welsch. During all these years, and continuing apparently to the time of trial below, the Stafford parcel was assessed under the general property tax law to Mr. Stafford and his successors. According to certificates of the county treasurer covering the tax years 1930 through 1953 all taxes assessed against the Stafford parcel were duly paid.

Turning now to the title history of that portion of lot 2 which lies immediately north of the Stafford parcel:

Prior to the years 1930 and 1931 the parcel described as "the north 18 acres of said lot 2" (less a presently unimportant "acre or more") was owned of record by parties identified as Libka, Seltz, and Weeks. For the tax years 1930 and 1931 such parcel was assessed to Libka and Seltz as "lot 2, frac. sec. 10, T17 N R15 E." Such assessments to Libka and Seltz were returned unpaid and, on account of such delinquency, "frl. lot 2, sec. 10, T17 N R15 E" was included in the 1938 tax sale and bid in by the State.* Thereafter, and at the ensuing land board sale, one Betts submitted an accepted bid for said fractional lot 2. At this point plaintiff Oscar W. Reed appeared in the picture. Reed, putting up the money for Libka, arranged for Libka's matching bid as "owner." The land board thereupon (July 15, 1940) deeded fractional lot 2 to Libka. January 8, 1941, Libka and wife conveyed by the same description to plaintiffs Oscar W. and Hannah A. Reed.

In 1943 defendant Welsch learned of the sale to Libka by means of correspondence with then Audi-

---

* In the meantime the interest of Seltz and Weeks seems to have passed to Libka. The record is not definite in such regard.

tor General Vernon J. Brown. Correspondence
continued with the auditor general, defendant
Welsch steadily insisting that the State, having
erred in selling all of lot 2 at the tax sale,* should
clear record title to the south part of lot 2. The
auditor general unsuccessfully attempted so to do
by letters addressed first to Libka and ultimately
to plaintiff Oscar W. Reed. Writing Libka under
date of February 15, 1944, the auditor general said:

"This application [for certificate of error] was
submitted by the Huron county treasurer who cer-
tifies that the taxes of 1930 and 1931 had been paid
to the township treasurer on the south 47 acres of
lot 2, and as evidence he enclosed copies of the
township treasurer's receipts.

"Therefore, the sale of taxes should be canceled
and a certificate of error issued against the deed to
the State of frl. lot 2, sec. 10, for the reason—part
paid township treasurer. However, it now appears
that this property was deeded to you as former
owner in July, 1940, by the State land office board.'

"If you did not own the entire frl. lot 2, as the
taxes involved were paid on the south 47 acres, it
appears that you should surrender your title. If
you are willing to do this we will ask the State land
office board to mail to you the proper forms for
quit claim and application for refund of the pur-
chase price."

Libka replied, referring the auditor general to
plaintiff Oscar W. Reed. The auditor general there-
upon (April 1, 1944) wrote Mr. Reed as follows:

---

* Plaintiffs' counsel observed, during the taking of testimony, that
the record showed "double taxation" by the local officials. He went
on to say: "I think counsel is trying to show that government lot 2,
except the north 2 or 3 acres are yet assessed to the plaintiff and
the south part of lot 2 are also still assessed to the citizens group,
or the bank, either one. That's been going on for years and recently
they have been collecting double taxes. There's no question about
that."

"This office has now received evidence from the Huron county treasurer to the effect that the taxes for which the State acquired title on the south 47 acres of lot 2 were properly paid to the township treasurer. As these taxes were properly paid, it is our opinion that the title given to Mr. Libka is of no consequence. Therefore, any title which he might have transferred to you would be the same.

"The bank, which is interested in this south 47 acres of lot 2, is attempting to remove the cloud on the title, placed thereon by the deed given to Mr. Libka, and subsequent deed to you.

"This office could issue a certificate of error against the State deed if the encumbrance placed thereon by the deeds to Mr. Libka and you were removed. Therefore, we are asking that you quitclaim to Mr. Libka the interest you received from him in order that he may properly quitclaim the same interest to the State. At the receipt of the proper quitclaim from Mr. Libka at the office of the State land board this department could proceed to the issuance of a certificate of error, therefore, clearing the title to the premises."

Reed did not reply so far as the record discloses. This brings us to the present litigation. January 24, 1952, the mentioned bank (Citizens Bank of Stafford, Smith & Co.) filed a petition, under the title of the annual Huron county tax proceeding of 1938 (chancery No. 2883), for amendment of the statutory decree of 1938 so as to exclude from operation thereof the Stafford parcel (south part of said lot 2). Such petition was thereafter consolidated for hearing with the present chancery case.

August 13, 1954, plaintiffs Reed filed this bill to quiet title, as against defendant Welsch and others, to entire fractional lot 2. The bill alleges validity of the mentioned tax sales of 1938 and 1940 and failure—stressing the 1-year limitation of section 70

of the general property tax law* and laches—of defendant Welsch and her predecessors to make or enter timely contest thereof. The case, consolidated as above with chancery No. 2883, came to issue and hearing in 1958† and resulted in an opinion and decree in favor of plaintiffs. Defendant Welsch appeals.

### *First: Are the purported tax sales of the Stafford parcel open to present attack?*

In *Farr* v. *Nordman*, 346 Mich 266, two dissenting members of this Court held that a bidder at tax sale acquires no title when the allegedly delinquent tax or taxes, for which the sale was made, have actually been paid or tendered prior to such sale. Our majority on that occasion, relying principally on *Odgers* v. *Lentz*, 319 Mich 502, and the 1906 parents thereof (*Hayward* v. *O'Connor*, 145 Mich 52 and *Shaaf* v. *O'Connor*, 146 Mich 504 [117 Am St Rep 652]), ruled (p 269) that "When the owner of land has notice—no matter how he obtains that notice—that his land has been sold for taxes, he must, if he desires to have the sale set aside by the circuit court, take proceedings within 1 year." Once again we face and vote upon the same clearly drawn issue

---

* CL 1948, § 211.70 (Stat Ann 1950 Rev § 7.115).—REPORTER.

† During the consolidated hearing below Auditor General Targonski testified to the fact of error of assessment and sale of the Stafford parcel. It developed in the course of his testimony that he had written the attorney general under date of April 26, 1955, urging that officer to appear in the present litigation for the purpose of rectifying what he called (properly) "a mistake" of his predecessor in office.

His letter to the attorney general concludes as follows:

"Neither you nor I have any obligation to do battle for the purpose of causing inconvenience to a member of the citizenry of the State so that an error of a former State official can be covered up. In fact, I feel we have a solemn obligation to correct the prior error. It is not our job to win cases but rather to protect the interests of the public.

"With that view in mind, I ask that your department continue to represent me in these cases."

of disagreement, the chancellor below having relied on *Odgers* and the parental origin thereof.

These holders in succession of sound record title had no notice, recognized by equity in this equity case, that the assessing officer was double-taxing— quite unlawfully—their property by including it in and with the required assessment of the adjoining Libka lands. Being legal strangers to the 1938 delinquent tax proceedings they were under no legal duty, at least until their title was brought into direct question by plaintiffs' instant bill (or, possibly, by trespass of plaintiffs), to attack this 1930 through 1940 record of wholly invalid tax proceedings. The reason is that such proceedings were, so far as same purportedly affected the Stafford parcel, void from the start. They remain so to this day. They were void because no lien for taxes attached to the Stafford parcel by force or virtue of the assessments to Libka and Seltz.

Consider *Rowland* v. *Doty,* Harr Ch 3, 8, and *Rayner* v. *Lee,* 20 Mich 384. In both cases the facts establishing invalidity of the involved tax sales were not so forceful as shown here. In *Rowland* the question arose on demurrer to a bill alleging that the plaintiff's premises had been sold, some years prior to filing of the bill, for delinquent taxes; whereas such taxes had been duly paid. The Court posed the litigated question thus: "Does the treasurer's deed to Wilson divest Rowland of his title, and is Rowland precluded by that deed from showing that the tax had been paid for which the lot was sold?" Here (p 9) is the Court's ruling (note quotation of a part of this passage in the opinion of Mr. Justice SMITH, *Farr* v. *Nordman, supra,* 290) :

"The conveyance from the treasurer vests 'an absolute estate in fee simple' *only* where the proceedings throughout have been regular. The right to

sell, being founded solely on the nonpayment of the tax, does not and cannot exist whenever the tax has been paid. A sale, therefore, when no tax is in fact due, is unauthorized, and the treasurer's deed on such unauthorized sale conveys no estate or title whatever."

In *Rayner* the Court spoke through Mr. Justice COOLEY. There it was held that a sale of land for taxes, the land having been twice assessed for the same year with the tax paid once, was similarly invalid. The case is close, very close, to this case of Reed. Here the south part of lot 2 was assessed twice in 1930, and twice again in 1931 (The same practice, presently immaterial, has continued ever since.). One such assessment in each year was valid, and the other each year quite invalid. The rightful owner paid each of the 2 rightfully assessed levies. The result, then, in this case of Reed, should be the same as in *Rayner*.

A scrutinized tax sale being void, this Court in former years did not hesitate to say so. See the consolidated cases of *Saph v. Auditor General*, 317 Mich 191, and *McLouth v. State Land Office Board*, 317 Mich 212, wherein apparently regular proceedings leading up to and including sale to the State of supposedly tax delinquent lands, and a subsequent land board sale of the same lands, were held void and open to collateral attack, the attack having been made years after the conclusion of such proceedings and sales. The reason for such adjudication of invalidity was that title to the subject premises had vested outright in the State (under then section 127 of the general property tax law [CL 1929, § 3520, as amended by PA 1931, No 50]) prior to the assessments for which the tax sale to the State was made. Such assessments in consequence were of no validity, and it was so adjudged. In *McLouth* the Court concluded thus (p 219):

"Having this day affirmed the lower court's 1946 decree in the *Saph Case* which voided the 1941 decree in that cause, there is no alternative but to hold that the 1942 tax sale, based upon the void 1941 decree, and the 1944 'scavenger' sale, were likewise void. Under the facts of this case, this being a court of equity, we reserve the right to determine the validity of such decree and sales, particularly so where there has been no intervention of the rights of third parties. See *Tromble* v. *Hoffman,* 130 Mich. 676; *Horton* v. *Salling,* 155 Mich 502; *Porter* v. *Auditor General,* 255 Mich 526."

The reasoning of *Horton* v. *Salling,* cited in *McLouth* above, was applied a year later in *McQuade* v. *State Land Office Board,* 321 Mich 235. In *McQuade* —as in this case—the 1-year limitation of venerable section 70 of the general property tax law* was relied upon to protect another invalid tax sale from the scrutiny of equity. Speaking through Mr. Justice CARR, the Court quoted at length from *Horton* and concluded (see text, 61 CJ, Taxation, § 1526, pp 1127, 1128) that "a tax sale is invalid for every purpose unless the property was at the time liable for all the taxes for which it was sold." Here is the way *Horton* was utilized in *McQuade* (p 244):

"However, failure to file objections within the specified period after the sale does not preclude an attack thereon, if such sale is void because of a want of jurisdiction to make it. This Court in *Horton* v. *Salling,* 155 Mich 502, held that a deed of State tax land was void because the auditor general accepted interest on the State's claim for taxes at a rate lower than that prescribed by the statute. In support of its conclusions, *Horton* v. *Helmholtz,* 149 Mich 227, was cited. In holding that plaintiff was not precluded under the provisions of section 70 of the general property tax law from seeking a decree in

---

* For the pertinent history with amendments of section 70, see CL 1929, § 3462; CL 1948, § 211.70 (Stat Ann 1950 Rev § 7.115).

equity to quiet his title to the property there in question, it was said (p 505):

"'The provision quoted from section 70 was designed to confer and limit, in tax cases, the general discretionary power, lodged in courts of equity to set aside sales, made in the same proceeding, for an inadequate price bid, or because of irregularities, and was not aimed at the authority of courts in general to hear and determine the validity of decrees and sales. This subject was discussed in the case of *Spaulding* v. *O'Connor,* 119 Mich 45. This sale being absolutely void, complainant might treat it so, and raise the question in ejectment (in a proper case) or by this proceeding.'"

*Odgers* v. *Lentz, supra,* and the 2 *O'Connor Cases* of 1906 (145 Mich 52 and 146 Mich 504 [117 Am St Rep 652]), are not opposed to the conclusion I would reach. That conclusion is that assessment of the 2 separately owned parcels as one, and the successive sales of both as one for delinquency of such assessment, being void, are open to attack by defendant Welsch regardless of said section 70. In *Odgers,* as in both *O'Connor Cases, taxes were validly levied on the subject premises.* Such *validly levied taxes* came to delinquency and so the jurisdiction of the court over the subject property, to which the tax lien had validly attached, was at least duly invoked by the respective statutory petitions. But here, as in *Saph* and *McLouth,* the court which assumed to authorize sale of the subject premises for delinquent taxes had no jurisdiction to proceed for want of valid assessment in the first place.

This bill to quiet title fails for want of title in plaintiffs to the Stafford parcel. It fails because the proceedings by which the State assumed to sell to Libka, on which plaintiffs necessarily depend, were wholly invalid (so far, of course, as concerns this nondelinquent and doubly-assessed Stafford

parcel). And it fails because no man's rightful title to land may be divested in the manner claimed here, section 70 notwithstanding.* Any other holding would raise grave question whether section 70, in application of its limitation, denies due process and equal protection.

The auditor general's annual petition, filed under former or present section 61 of the general property tax law (CL 1929, § 3452; CL 1948, § 211.61 [CLS 1956, § 211.61, Stat Ann 1950 Rev § 7.105, Stat Ann 1957 Cum Supp § 7.105]) for the sale of specific property as tax delinquent, when of judicially noticed record in the county treasurer's office there is no such delinquency, confers no jurisdiction over such property and authorizes no decree for sale thereof. In such case the owner, whether apprised or not of the proceeding, may stand on his firm right and wait until it is attacked by actionable trespass or direct suit. This is the rule of *Horton* and of the cited cases which follow *Horton.* It makes good legal sense, and it appeals to the conscience of equity.

There is one sure way to make of this case a worthy and reliable precedent. It is to openly say, with a deferential tip of each freshman's hat to the learning of *Horton, Saph, McLouth,* and *McQuade,* that a tax sale is void "for every purpose" unless the property was at the time actually subject to the tax lien for which the authorities presumed to sell it.

---

* See *Tromble* v. *Hoffman,* 130 Mich 676, 684 (cited as above in *McLouth*), where the Court (p 684) said this of section 70:

"The statute forbids the setting aside a sale after the lapse of 1 year from confirmation. In *Benedict* v. *Auditor General,* 104 Mich 269, we held that, where the proceedings were absolutely void for want of jurisdiction, section 70 of the tax law did not preclude a review of the question on petition to vacate the decree."

## Second: The Question of Laches.

In another somewhat similar tax case (*Holmes* v. *Soule,* 180 Mich 526) the auditor general's concededly valid tax deed to the defendant bidder was executed in pursuance of statutory proceedings based on tax delinquency for the years 1888 through 1891. However, the grantee and those claiming under him failed continuously to give the required notice of redemption to the plaintiff, the latter being holder of the "original or government title."* In *Holmes,* as here, neither of the title contenders took any step in court, until several years had elapsed, to perfect title or right according to their respective claims. In that case, too, neither party was in actual possession of the involved premises when the question of title was brought into court. Finally, and again as here, the claimants by tax title insisted that the holder of record title was guilty of laches.

Consideration of the question of laches was, in *Holmes,* opened with this observation (p 531):

"Defendants are not aided, in law, by having occupied the land, if in fact they have occupied it (a fact not found by the trial court, and of which the testimony is not convincing), because they had no right to its possession."

The subject was concluded in these words (pp 532, 533):

"Neither party having been in possession of the land, there is no controlling statute of limitations. Defendants and their grantor have done nothing in reliance upon the silence of complainant's grantor. They have paid the taxes, which they were obliged to do to protect their interest. Laches implies negligence—a neglect or failure to do what ought to be done under the circumstances to protect the rights

---

* A notice actually was given in 1902. It was, however, legally defective.

of the parties to whom it is imputed, or involving injury to the opposite party through neglect to assert rights within a reasonable time. Usually one having an interest in land which is not in the actual possession of another is under no obligation to assert his interest until it is attacked, and there seems to be no good reason for saying that one having such a right as the complainant claims may not remain silent until his right is questioned. In any event there is no apparent reason for holding that the right is cut off and lost in favor of another who has taken ineffectual proceedings to divest it."

The present plaintiffs, alleging as they do laches of defendant Welsch and her predecessors, themselves took no steps to perfect their claimed title as against the troublesome, nay formidable, record title derived through Mr. Stafford. In the meantime defendant Welsch was, to say the least, busily and doubtless angrily engaged in pursuit of the auditor general for execution by him of a statutory certificate of error.*

The above quoted doctrine, applied as it was in a tax case, is simply a continued reflection of equity's consistent rule that "lapse of time alone is not sufficient to constitute laches." See *Tilley* v. *Brady,* 323 Mich 547, 551, and *Boston-Edison Protective Association* v. *Teahen,* 337 Mich 353, 358–360, in which the respective opinions were written for the Court by Mr. Justice Carr. In the second of these cases (*Teahen*) the rule of *Angeloff* v. *Smith,* 254 Mich 99 was considered and adopted as follows (p 360):

---

* We need not decide whether the auditor general should, according to the 1944 demand of defendant Welsch, have issued such a certificate. As to that point see *Jakobowski* v. *Auditor General,* 144 Mich 46; *O'Connor* v. *Carpenter,* 144 Mich 240; the concluding paragraphs of *Shaaf* v. *O'Connor,* 146 Mich 504, 506 (117 Am St Rep 652); and the statute as it stood when the auditor general affirmed this tax sale error by the correspondence in 1944 with Welsch and Reed (CL 1948, § 211.98 [Stat Ann 1950 Rev § 7.151]).

"Numerous cases involving questions analogous to those presented have heretofore been considered and determined by this Court. In *Angeloff* v. *Smith,* 254 Mich 99, 101, it was said:

" 'The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right. *Epstean* v. *Mintz,* 226 Mich 660.

" 'Where the right is not an executory one but is a vested legal title, the doctrine of laches has little, if any, application. 21 CJ, Equity, § 213, p 215. This is particularly true where the title is of record for the world to see.' "

The perfectly good record title of defendant Welsch and her predecessors was similarly visible, for all the world to see, when Libka's conveyance to plaintiffs was made in 1941. It has remained so ever since. The rule of *Angeloff* applies here, there being no proof—and plaintiffs bear the burden thereof—of any intervening change of conditions as might render it inequitable to deny validity of plaintiffs' quite invalid tax title. There is, hence, no proof of laches on the part of the successive record owners of the south part of lot 2.

I vote to reverse and remand for entry of decree dismissing plaintiffs' bill. To settle all matters in controversy according to the tenets of equity, the decree should adjudge validity of defendant Welsch's title to the south part of lot 2 as against plaintiffs. Costs to defendant Welsch should be awarded.

As to the petition of defendant Welsch, filed as shown above in the 1938 tax sale proceeding, same should be dismissed below by order making appro-

priate reference to the final decree in the present chancery case.

Smith and Edwards, JJ., concurred with Black, J.

Dethmers, C. J., and Carr and Kelly, JJ., concurred in result.

Kavanagh, J., did not sit.

Souris, J., took no part in the decision of this case.